the alleged wrongful denial of benefits." (Def. Fiduciary Br., at 3.) Morley contends that she is not seeking duplicative relief; rather, she seeks an equitable declaration in her claim that represents additional relief available to her because of the defendants' fiduciary breaches. Specifically, Morley asserts that she is claiming as additional relief (1) protection from future claim terminations, and (2) interest on delayed benefits. The Court finds that the alleged "additional relief" sought by Morley is available as relief for her wrongful denial of benefits claim.

ERISA states that a "fiduciary shall discharge [*67] his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). An individual allegedly harmed by a breach of the fiduciary duty described in Section 1104(a)(1) may only seek the relief allowed by Section 1132(a)(3). Varity Corp. v. Howe, 516 U.S. 489, 507, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996). 7 Section 1132(a)(3) provides that a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter (B) to obtain other appropriate equitable relief (i) to redress such violations[,] or (ii) to enforce any provisions of this subchapter." Id. Thus, the relief available under Section 1132 (a)(3)(B) is limited to "appropriate equitable relief," of which "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Varity Corp., 516 U.S. at 515; see McCoy v. Bd. of Trustees of Laborers' Int'l Union Loc. No. 222, 188 F.Supp.2d 461, 472 n.10 (D.N.J. 2002) (granting [*68] defendants' motion for summary judgment on breach of fiduciary duty claims and explaining that plaintiff "cannot receive anything in his breach of fiduciary claims that [the court has] not already awarded him under [the plaintiff's] claim for benefits. Equitable relief for a breach of fiduciary duty claim is not appropriate in that circumstance.").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

7 As an individual, Morley could not bring a breach of fiduciary duty claim under Section 1109. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Section 1132(a)(1)(B) provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Id. Morley claims that she is seeking equitable relief in the form of protection from future claim terminations. (Pl. Fiduciary Opp. Br., at 7.) However, this form of relief does not constitute [*69] "additional relief" otherwise not provided for in Section 1132(a)(1)(B). Instead, this type of relief is specifically provided for and contemplated by the language in Section 1132(a)(1)(B).

Morley has also argued that her claim for prejudgment interest on delayed benefits constitutes "appropriate equitable relief" under Section 1132(a)(3). (Id. at 7-8.) Morley's reliance on Fotta v. Trustees of the UMW Health & Ret. Fund of 1974, 165 F.3d 209, 213 (3d Cir. 1998), in support of this contention is misplaced. The Fotta court stated that Section 1132(a)(3)(B) -- "allowing a beneficiary to sue for 'other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan' [--] is the appropriate vehicle for such a cause of action." Id. However, the Third Circuit later clarified its holding in Fotta by explaining that "an ERISA plaintiff who prevails under [Section 1132(a)(1)(B)] in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award." Skretvedt v. E.I. duPont de Nemours, 372 F.3d 193, 208 (3d Cir. 2004). 8 Therefore, Morley can seek prejudgment [*70] interest if she prevails on her claim for wrongful denial of benefits. Accordingly, Morley has not claimed any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial of benefits claim.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

**8** The court went on to say that "[t]o the extent that Fotta II discusses a successful ERISA plaintiff needing to use § [1132](a)(3)(B) to 'sue for interest,' in the context of deciding whether a plaintiff who had not received an underlying award of benefits under § [1132] (a)(1)(B) could still sue for interest on the delayed payment of benefits under § [1132] (a)(3)(B), such statements are dicta." Id. at 208 n.20.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## C. Claims Against Gates and BCAC

The defendants assert that if judgment is entered for the defendants on Morley's breach of fiduciary duty claim, the Court should dismiss her other claims against Gates and BCAC. The defendants claim that the "only entity which can be liable for the alleged **[*71]** wrongful denial of LTD benefits is the Plan itself." (Defs. Fiduciary Br., at 11.) The defendants also argue that the only named defendant that could be held liable for disclosure penalties under Section 1132(c) is the Plan Administrator. (Id.) Morley argues that her wrongful denial of benefits claim is viable against BCAC and Gates because (1) Gates participated in processing claimants' payments, and (2) BCAC is "merely an instrumentality of the Plan Administrator." (Pl. Fiduciary Opp. Br., at 8-9.) Morley also, although withdrawing her disclosure penalty claim against Gates, asserts that BCAC is a proper defendant for purposes of that claim. (Id. at 9.)

"A plan participant or beneficiary may sue to recover benefits due pursuant to § 1132(a)(1)(B)[; however, [t]he only proper party defendants in such an action . . . would be the plan and plan administrator or trustee in his capacity as such." DeFelice v. Daspin, 2002 U.S. Dist. LEXIS 17599, No. 01-1760, 2002 WL 1373759, at *6 (E.D. Pa. June 25, 2002). Although the Plan Administrator has delegated BCAC as "the final review committee under the Plan," BCAC is, as Morley admits, "merely an instrumentality of the Plan Administrator." **[*72]** Thus, only the Plan Administrator, Avaya, and the Avaya LTD Plan are proper defendants for Morley's wrongful denial of benefits claim. **9**

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

**9** The Court, in granting the defendants' motion for summary judgment on Morley's disclosure penalties, need not address the additional arguments concerning the proper defendants on her disclosure claim. However, the Court notes that for the same reasons mentioned above, BCAC would not be a proper defendant as it is merely an instrumentality of the Plan Administrator, Avaya.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## VI. Scope of the Administrative Record

## A. Breadth of the Administrative Record

Morley contends that the administrative record should contain all "materials submitted to the Plan Administrator for consideration which [she] had an opportunity to rebut. These items would include all materials submitted by . . . Morley to the Plan Administrator from December[] 2001 [for BCAC's first review] through [the commencement of the litigation on] January 29, 2004." (Pl. Admin. Rec. Br., at **[*73]** 4.) Thus, Morley argues that the Court should exclude from the administrative record all documents included in the second BCAC review. (Pl. Admin. Rec. Opp. Br., at 2-5; Pl. Admin. Rec. Reply Br., at 2-5.) The defendants contend that the administrative record either contains "all of the documents reviewed by both BCAC Committees (through December 10, 2004), or should only include the information before the first BCAC (April[] 2003), from whose denial plaintiff filed her lawsuit." (Def. Admin. Rec. Br., at 4-5.)

"Under the arbitrary and capricious standard of review, the 'whole' record consists of that evidence

that was before the administrator when he made the decision being reviewed." Mitchell v. Eastman Kodak, 113 F.3d 433, 440 (3d Cir. 1997) (citations omitted). BCAC denied Morley's appeal through a letter dated April 24, 2003, and approximately 8 months after BCAC denied her appeal, Morley's counsel sent a letter addressed to "Shelley Anderson[,] Secretary, Avaya [BCAC]" dated January 22, 2004, (1) stating that Morley's application for SSD benefits had been approved, (2) enclosing various records regarding her successful SSD application (including a **[*74]** copy of her award check), and (3) requesting that BCAC place the enclosed items into Morley's LTD administrative record. (3-27-06 Vance Certif., at P 4, Ex. C, 1-22-04 Vance Letter to BCAC.) Seven days later, on January 29, 2004, Morley brought this action. (Dkt. entry no. 1.) Avaya sent Morley a letter on August 20, 2004, advising her that BCAC would meet on September 17, 2004, to determine whether to open her claim in light of its receipt of additional medical documentation from her. (Pretrial Ord., at 5-6.) BCAC convened on September 17, 2004, and voted to reopen Morley's claim. (Id. at 6.)

The Court finds, as Morley's counsel conceded at oral argument, that Morley continued to pursue administrative remedies through BCAC and Avaya even after bringing this action. (Dkt. entry no. 53.) Morley's counsel submitted medical documentation to BCAC in April and May 2003, and submitted Morley's entire successful social security application to BCAC just seven days before filing the complaint. Morley contends that the second BCAC review was a "sham instituted only for litigation purposes" and "without any authority." (Pl. Admin. Rec. Reply Br., at 2-5; Pl. Admin. Rec. Opp. Br., at **[*75]** 3.) However, BCAC did conduct a second review in which Morley participated, and which presumably could have resulted in an award of LTD benefits to her. Also, BCAC's correspondence to Morley indicates that it determined that it would possibly reopen her claim based on the additional medical documentation that she provided. The parties' dispute over the propriety or rationale for the second BCAC review is a disputed issue of fact that cannot be resolved on a motion for summary judgment. Therefore, as BCAC did conduct two reviews of Morley's LTD benefit claim, the Court finds that the administrative record shall consist of those documents, except for those specifically excluded below, reviewed by both BCAC Committees (or until the second denial on December 10, 2004).

### B. Specific Exclusions

#### 1. Dr. Motia's Records

Morley contends that "[a]ny guidance, comments, or information supplied by the BCAC Medical Advisor, Alladin Motia, MD, should not be included in the administrative record." (Pl. Admin. Rec. Br., at 4.) However, Morley fails to identify a single document containing "guidance, comments, or information supplied" by Dr. Motia. Therefore, without listing any documents **[*76]** for the Court to exclude, the Court cannot exclude any such documents from the administrative record.

#### 2. Dr. Basinger's report

Morley asserts that Dr. Basinger's report should be excluded because it was not presented to her for rebuttal before bringing this action. Avaya sent Morley a letter dated November 8, 2004, enclosing a copy of Dr. Basinger's report and advising that she had approximately 15 days to respond to the report. (3-20-06 Connelly Cert., at Ex. A.) The Court finds that Morley was presented with a copy of this report, and BCAC considered it in its second review of Morley's claim for LTD benefits. Therefore, the Court will include Dr. Basinger's report in the administrative record.

#### 3. Records relating to Morley's state court litigation against Avaya

The parties agree that documents concerning Morley's state court litigation against Avaya should not be included in the administrative record. (Def. Admin. Rec. Opp. Br., at 8; Pl. Admin. Rec. Br., at 4-5.) As such, the Court will exclude these documents from inclusion in the administrative record.

4. Morley's social security award

Morley contends that the her social security disability award should be included in the **[\*77]** administrative record. Because the Court has determined that the administrative record would include documents presented to Avaya until December 10, 2004, the defendants concede that the social security award should be included in the administrative record. As such, the social security award is included as part of the administrative record.

5. Proposed Exhibit 11 - Picture of nuts and bolts

The defendants argue that this document, a "photograph of the nuts and bolts apparatus which was apparently installed in [Morley's] back" should be excluded from the administrative record because it was not provided to BCAC for review. (Def. Admin. Rec. Br., at 9.) Morley asserts that this material was available to BCAC "well prior to the filing of" her lawsuit and prior to BCAC's December 2004 meeting. (Pl. Admin. Rec. Opp. Br., at 7.) As there is a genuine disputed issue as to whether this document was provided to BCAC for its review, the Court will defer ruling on this document's inclusion in the administrative record.

6. Documents related to Morley's disclosure requests

The defendants claim that proposed exhibits 4, 14, 35-37, 47-48, 98-99, and 134-135, should not be part of the administrative **[\*78]** record for purposes of Morley's wrongful denial of LTD benefits claim because the documents relate solely to Morley's disclosure penalties claim. (Defs. Admin. Rec. Br., at 5-6 & n.4.) These documents are: (1) BCAC's initial disclosure response by Shelley Anderson (exhibit 4); (2) Morley's December 20, 2002 disclosure request to BCAC (exhibit 14); (3) Morley's December 20, 2002 disclosure request to BCAC with handwritten notations (exhibit 35); (4) correspondence from Vance to BCAC, dated February 3, 2003, regarding the appellate deadline extension (exhibit 36); (5) correspondence from Vance to BCAC counsel, dated January 31, 2003, regarding disclosure issues, with handwritten notations (exhibit 37); (6) by-laws for operation of BCAC (exhibit 47); (7) the professional services contract between Avaya and Gates (exhibit 48); (8) "Opinion 79-82A" (exhibit 98); (9) The Medical Disability Advisor (exhibit 99); (10) "Form 550 Annual Return/Report of Employee Benefit Plan 2001" (exhibit 134); and (11) Application for extension of time to file certain employee plan returns (exhibit 135). (Pretrial Ord., at 28-36.) Morley has not specifically responded to the defendants' arguments regarding **[\*79]** the inclusion of these documents. The Court finds that only proposed exhibits 4 and 14 appear on their face to be specifically part of Morley's disclosure penalties claim. The defendants have not shown that the remaining documents are completely unrelated to Morley's wrongful denial of benefits claim. As such, the Court will defer determining whether those documents should be included until trial.

7. Medical reports allegedly not reviewed by BCAC

The defendants assert that (1) proposed exhibit 67, an August 11, 2003 report from Karen Schultz, PT, (2) proposed exhibit 77, a May 17, 2004 report from Dr. Rempson, and (3) proposed exhibit 80, an August 9, 2004 report from Dr. Knightly should be excluded from inclusion in the administrative record because there is no evidence that they were presented to BCAC. (Defs. Admin. Rec. Br., at 9.) Morley has not responded to these contentions. The Court cannot find any evidence of record indicating that these documents were produced to BCAC for consideration. Therefore, these documents are excluded from the administrative record.

8. Avaya financial documents

The defendants assert that proposed exhibits 153 through 161, including various financial **[\*80]** documents -- SEC Form 10-Ks, and Avaya "Stock Quote & History" -- were not in the administrative record during either review of Morley's claim for LTD benefits. (Defs. Admin. Rec. Br., at 9.) Morley has not addressed the defendants' arguments for excluding these documents in

her briefs. The Court will exclude these documents from the administrative record.

9. Other documents specifically requested to be included by Morley

Morley asserts that the (1) January 23, 2002 operative report completed by Dr. Knightly, (2) January 30, 2002 job description prepared by James Bird of Avaya, (3) March 11, 2004 report of Allyson K. Hurley, DDS, and (4) February 10, 2003 medical report by Donald H. Frank, MD, should be included in the administrative record. The defendants, based in part on the Court's determination as to the breadth of the administrative record, concede that these documents should be included in the administrative record. Accordingly, these documents are included in the administrative record.

10. Documents relating to defenses

The defendants contend that exhibits 132, 133, 141, 142, 144, and 147 through 152, support their various defenses and, as such, should be excluded from **[*81]** the administrative record. [10] These exhibits include: (1) Morley's complaint filed in state court against Avaya (exhibit 132); (2) the complaint in this action (exhibit 133); (3) the settlement agreement and general release for the state court action (exhibit 141); (4) print-out of payments of workers' compensation benefits (exhibit 142); (5) Morley's W2 statements (exhibit 144); (6) Morley's answers to interrogatories and requests for admissions (exhibits 147-150); and (7) the defendants answers to interrogatories and requests for admissions (exhibits 151-152). Morley has not argued that these documents were part of the administrative record before Gates or BCAC or that they should be included in the administrative record before the Court. The Court will exclude these documents from the administrative record.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[10] The defendants' brief states that exhibits 145 and 146 are answers to discovery. (Defs. Admin. Rec. Br., at 5-6 & n.4.) The Court notes that exhibit 145 is described as an "Appointment of Plan Administrator for Avaya Inc.'s Health and Welfare Plans w/ Exhibit A," and exhibit 146 is listed as "Case Notes of Gates McDonald." (Pretrial Ord., at 37.) Therefore, these documents do not appear to constitute "answers to discovery" and the Court has not considered them as being included in the defendants' request.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

**[*82] CONCLUSION**

The Avaya LTD Plan does not provide conflicting and unambiguous grants of discretion regarding employee plan eligibility between Gates and the Plan Administrator. The Court will (1) deny the part of the cross motion to determine the standard of review insofar as it seeks to have the Court apply a de novo standard, and (2) grant the part of the motion to determine the standard of review seeking to have the Court apply an arbitrary and capricious standard of review. The Court finds that there are disputed issues of fact that would possibly justify heightening the applicable arbitrary and capricious standard of review. Therefore, the Court will (1) deny without prejudice the part of the motion seeking to have the Court apply the arbitrary and capricious standard of review without heightened scrutiny, and (2) deny without prejudice the part of the cross motion insofar as it seeks to have the Court apply a heightened arbitrary and capricious standard of review.

Morley has failed to demonstrate that she is entitled to disclosure penalties for the Plan Administrator's failure to provide her with a copy of the BCAC by-laws or the services contract between Gates **[*83]** and Avaya. The defendants have shown that Morley is not entitled to disclosure penalties for the Plan Administrator's failure to turn over those documents because they are not the type of documents required for disclosure under Section 1024(b)(4). The Court will (1)

grant the motion for summary judgment on the disclosure claim, and (2) deny Morley's cross motion seeking an award of disclosure penalties.

The Avaya LTD Plan provides for an offset of monies Morley received as part of her social security disability award and temporary workers' compensation. However, the Plan does not provide for an offset of monies Morley received in her settlement in the state court action against Avaya. Also, Morley has not received a determination as to her eligibility for permanent workers' compensation benefits. Accordingly, the Court will (1) grant the part of the motion seeking an offset of (a) social security benefits, and (b) temporary workers' compensation benefits, (2) deny the part of the motion seeking an offset for monies paid to Morley as part of her discrimination lawsuit against Avaya, and (3) deny without prejudice the part of the motion seeking an offset for any award of permanent workers'  **[\*84]**  compensation benefits.

The defendants have shown that Morley's requests for relief under her breach of fiduciary duty claim in Count II of the complaint are duplicative of her potential remedies for the wrongful denial of benefits claim in Count I. Moreover, Gates and BCAC are not proper defendants in the wrongful denial of benefits claim. Thus, the Court will grant the motion for summary judgment on the breach of fiduciary duty claim, and (2) enter judgment in favor of BCAC and Gates on the wrongful denial of benefits claim.

The Court finds that the scope of the administrative record should include all documents presented from the inception of Morley's claim for LTD benefits to the second BCAC Committee's review and denial of her claim on December 10, 2004. The Court will (1) grant the part of the motion seeking to include all documents reviewed by both BCAC Committees (through December 10, 2004), and (2) deny the part of the cross motion seeking to limit the scope of the administrative record to include only those documents submitted by her from December 2001 (for BCAC's first review) through the commencement of this litigation on January 29, 2004. The Court will also (1) grant **[\*85]**  the part of the motion seeking to exclude certain documents, including proposed exhibits 4, 14, 67, 77, 80, 132-133, 141-142, 144, and 147-152, and (2) deny without prejudice the part of the motion seeking to exclude proposed exhibits 11, 35-37, 47-48, 98-99, and 134-35. The Court will further (1) grant the part of the cross motion seeking to (a) exclude records relating to Morley's state court litigation against Avaya, and (b) include the (i) January 23, 2002 report of John Knightly, MD, (ii) January 30, 2002 job description prepared by James Bird of Avaya, (iii) March 11, 2004 report of Allyson K. Hurley, DDS, and (iv) February 10, 2003 medical report by Donald H. Frank, MD, (2) deny the part of the cross motion seeking to exclude (a) any "guidance, comments, or information" provided by BCAC Medical Advisor Alladin Motta, MD, and (b) the report of Joseph Basinger, MD, and (3) deny without prejudice the part of the cross motion seeking to include in the administrative record proposed exhibit 11. The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper

United States District Judge

# EXHIBIT F

## Citation # 4
## 2010 US Dist Lexis 32268

⚠ Caution , As of May 20 , 2013

KENNETH ZAHL, M.D., individually and on assignment of his patients, Plaintiff, v. CIGNA CORPORATION; JOHN AND JANE DOES 1-100, Fictitious Persons or Entities, Jointly, Severally, and Alternatively, Defendants.

Civ. Action No. 09-1527 (KSH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2010 U.S. Dist. LEXIS 32268

March 31, 2010, Filed

**NOTICE:** NOT FOR PUBLICATION

**CORE TERMS:** state law claims, fiduciary duties, benefit plans, patient, cause of action, equitable relief, party beneficiary, beneficiary's, preempt, health care, plan benefits, breach of contract, misrepresentation, preempted, coverage, assignee, lawsuit, medical benefits, unjust enrichment, summary judgment, impermissibly, duplicative, preemption, affiliates, fiduciary, quotation, discovery, assigned, breached, pension

**COUNSEL:** **[*1]** KENNETH ZAHL, M.D., individually, KENNETH ZAHL, M.D., on ASSIGNMENT of his PATIENTS, Plaintiffs, Pro se, MORRISTOWN, NJ.

For CIGNA CORPORATION, Defendant: ERIC EVANS WOHLFORTH, LEAD ATTORNEY, JENNIFER MARINO THIBODAUX, GIBBONS, P.C., NEWARK, NJ.

**JUDGES:** Katharine S. Hayden, United States District Judge.

**OPINION BY:** Katharine S. Hayden

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on the motion to dismiss [D.E. 14] filed by defendant Cigna Corporation ("Cigna") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") as to Counts One, Three, Four and Five of the amended complaint *pro se* plaintiff Kenneth Zahl filed in federal court. [D.E. 11.] The crux of this lawsuit pertains to Zahl's contention that Cigna has not properly paid for services he rendered as a medical doctor to members of health care plans administered by Cigna or its affiliates. Cigna submits that Counts One, Three and Four set forth, respectively, state law claims for breach of contract, misrepresentation, and unjust enrichment and are preempted by the federal Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1101, et seq. Additionally, Cigna contends that Count Five, **[*2]** in which Zahl seeks recovery for alleged breach of fiduciary duties under ERISA, is impermissibly pleaded as a re-characterization of a claim for benefits.

## II. BACKGROUND INFORMATION

### a. Factual Allegations

According to the amended complaint, Kenneth Zahl was a licensed physician in New York and New Jersey, specializing in chronic pain treatment. (Am. Compl. P 1.) The complaint states that on May 11, 2006, Zahl's license to practice medicine and surgery in New Jersey was revoked because he was found to have engaged in dishonest or fraudulent practices by over-billing $ 1,949 to Medicare. (*Id.* P 3.) On April 18, 2008, the relevant New York state authorities also revoked his medical license. (*Id.*)

According to Zahl, Cigna is one of the "big five" insurance carriers that provide health benefits to individuals throughout the United States. (*Id.* P 6.) He claims that Cigna issued insurance policies, received payment of premiums, and agreed to cause coverage to be issued to some of his patients. (*Id.* P 12.) He alleges that after he provided treatment to these patients in New Jersey and New York, they billed Cigna for the treatment and it, in turn, "either underpaid (by falsely and fraudulently **[\*3]** using a deflated [Usable and Customary Rate]); or declined to pay for certain procedures, supplies or injectables." (*Id.* P 13.) He brings this lawsuit as a third party beneficiary of his patients' insurance benefits, which he claims he was assigned prior to rendering medical care. (*Id.* P 2.)

### b. Causes of Action

In Count One, Zahl pleads a state law cause of action for breach of contract, in which he seeks to recover the health care benefits that he alleges were wrongfully denied by Cigna and/or its affiliates. (*Id.* P 20.) In Count Two, Zahl brings a cause of action under ERISA's § 502(a)(1), which provides a cause of action for a third party beneficiary seeking payment pursuant to patients' health plan benefits. (*Id.* PP 25-35.) In all, Zahl seeks $ 182,751.52 for his services rendered, plus consequential and compensatory damages, interest fees and costs. (*Id.* P 34.) Cigna does not move for dismissal of Count Two on this motion because it "arguably states a viable claim for benefits under ERISA." (Def.'s Br. 1.) In Count Three, Zahl brings a common law negligent misrepresentation claim, in which he alleges that Cigna promised to pay for his services and that he relied on those promises **[\*4]** to his detriment. (Am. Compl. P 36.) In Count Four, Zahl brings a claim for unjust enrichment against Cigna because, as he asserts, it benefitted from his rendering of services to his patients, and in Count Five, he alleges that Cigna breached the fiduciary duty it owed him under ERISA without specifying the ERISA provision he invokes.

## III. DISCUSSION

Each of Zahl's five claims arises from his third party beneficiary interests, assigned to him by virtue of the medical services he provided to participants in employee benefit plans. (*See generally,* Am. Compl.) Congress enacted ERISA to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans; and further to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). It is settled in this District that Zahl, as an assignee of these rights, stands in the shoes of his patients and may sue on their behalf to collect unpaid benefits. *See Wayne Surgical Center LLC v. Concentra Preferred Sys., Inc.,* 2007 U.S. Dist. LEXIS 61137, 2007 WL 2416428 (D.N.J. Aug. 20, 2007) (Ackerman, J.) (holding that as an assignee **[\*5]** of medical benefits, a medical provider has standing to sue under § 502(a) of ERISA).

### A. State Law Claims under Counts One, Three, and Four

The purpose of ERISA is to provide a uniform regulatory scheme over legal issues relating to employee benefit plans. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). To this end, ERISA contains two statutory provisions that preempt state law causes of action: § 502(a), codified as 29 U.S.C. § 1132(a), which sets forth a comprehensive civil enforcement scheme foreclosing any state law claim falling within its scope; and § 514(a), codified

as 29 U.S.C. § 1144(a), which preempts "any and all state laws" that "relate to any employee benefit plan." These provisions "are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" _Aetna Health Inc. v. Davila_, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004) (_quoting Alessi v. Raybestos-Manhattan, Inc._, 451 U.S. 504, 523, 101 S. Ct. 1895, 68 L. Ed. 2d 402 (1981)). The Supreme Court has broadly applied these provisions to preempt "the subject of every state law that 'relates to' an employee benefit governed by ERISA." _FMC Corp. v. Holliday,_ 498 U.S. 52, 58, 111 S. Ct. 403, 112 L. Ed. 2d 356 (1990) (internal quotation omitted). A plaintiff may not assert **[*6]** a state law cause of action that "has a connection with or reference to such a plan." _Shaw,_ 463 U.S. at 97. _See also Illingworth v. Nestle U.S.A.,_ 926 F. Supp. 482, 492 (D.N.J. 1996) ("Because [plaintiff's] claim relates to an employee benefit plan, ERISA preempts New Jersey law, and any entitlement to relief is governed by federal law.").

Here, it is undisputed that each of Zahl's claims involves his rights as a beneficiary under his patients' health benefits. (_See_ Am. Compl. P 11 ("Plaintiff Zahl is a third party beneficiary of the health care benefits issued by defendant CIGNA"); P 9 ("Plaintiffs believe that a Federal Court has jurisdiction over this action under [ERISA]"); P 12 ("Pursuant to these insurance policies, defendant Cigna received payment of premiums in [sic] and in consideration, therefore agreed to cause coverage to be issued to a patient of plaintiff. . .").)

In response to Cigna's motion for dismissal of his three state law claims, Zahl argues that the uncertainty of Cigna's role in the administration of the medical benefits at issue here makes it unclear whether his claims trigger ERISA preemption. To this end, he argues that "at this stage of the litigation, there **[*7]** is a possibility that if Cigna were solely the third party [administrator], that the employer itself might have privity with Zahl and would have to be joined under state law claims." (Pl.'s Br. 6.) Thus, he contends, during discovery "it will be known for sure whether the plans in question are governed or not under ERISA," behooving the Court to deny Cigna's motion to dismiss these claims so early in the litigation. (_Id._)

ERISA covers two types of health benefit plans--pension plans, _see_ 29 U.S.C. § 1002(2)(A), and welfare plans. _See_ 29 U.S.C. § 1002(1). As one of ERISA's preemptive provisions states, "any and all state laws" that "relate to _any employee benefit plan_" are preempted. 29 U.S.C. § 1144(a) (emphasis added). Counts One (breach of contract), Three (misrepresentation), and Four (unjust enrichment) are state law causes of action involving Zahl's rights as a third party beneficiary of his patients' health care plan benefits. As such, the Court finds that irrespective of exactly what entity is the insurance company or underwriter, the insurance coverage alleged in the complaint relates to an "employee benefit." No amount of discovery can alter this fact. The state law claims fall **[*8]** under the umbrella of ERISA preemption, and Cigna's motion is granted as to Counts One, Three and Four. [1]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[1] The Court notes that since 2007, Zahl has initiated 19 lawsuits in this District. Recently, Judge Hochberg granted Unitedhealth Group's motion to dismiss state law claims brought by Zahl because they were preempted by ERISA. _Zahl v. Unitedhealth Group Inc.,_ Civ. No. 09-1321 (Sept. 24, 2009).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

## B. Count Five -- Claim for Breach of Fiduciary Duties under ERISA

In Count Five, Zahl alleges that under ERISA Cigna breached the fiduciary duties it owed him as a third party beneficiary. (_See_ Am. Compl. PP 33-34.) As he does in each of his other claims, he seeks damages. (_Id._ P 35.) Cigna argues that this claim should be dismissed because "a claimant pressing a claim for plan benefits under Section 502(a)(1)," which Zahl does in Count Two, "cannot re-characterize that claim as one for breach of fiduciary duties under Section 502(a)(3)." (Def.'s

Br. 12.)

In _D'Amico v. CBS Corporation,_ 297 F.3d 287, 291 (3d Cir. 2002), pension plan participants sued their former employer under ERISA alleging that there had been an illegal partial termination of a plan that entitled all non-vested participants to **[*9]** become vested. In finding that a plaintiff who brings a claim for breach of fiduciary duties under ERISA must exhaust his administrative remedies, the Third Circuit held that claims for breach of fiduciary duties may be "synonymous with a claim to enforce the terms of a benefit plan," and are held to the same exhaustion requirements imposed on claims to enforce ERISA-regulated plans. _Id._ Similarly, in _Harrow v. Prudential Insurance Company of America,_ 279 F.3d 244 (3d Cir. 2002), the Third Circuit held that "a claim for breach of fiduciary duty is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an ERISA-regulated plan rather than upon an interpretation and application of ERISA." 279 F.3d at 254 (internal quotations omitted).

Relying on these decisions, in _Morley v. Avaya, Inc. Long Term Disability Plan,_ 2006 U.S. Dist. LEXIS 53720, 2006 WL 2226336, at *23 (D.N.J. Aug. 3, 2006), Judge Cooper dismissed a claim by an employee who, in addition to her claims for damages, sought equitable relief under Section 502 (a)(3) against the threat of future claim denials by her employer. Judge Cooper rejected plaintiff's argument that such a claim could be viable:

> [Section 502(a)(3)] **[*10]** provides that a civil action may be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter." Thus, the relief available under Section [502(a)(3)(B)] is limited to "appropriate equitable relief," of which "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"

(_Quoting_ 29 U.S.C. 1132(a)(3) and _Varity Corp. v. Howe,_ 516 U.S. 489, 515, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996) (internal citations omitted)). Judge Cooper granted summary judgment on the claim because plaintiff did not "claim[] any additional relief under her breach of fiduciary duty claim that she is not otherwise potentially entitled to if she prevails on her wrongful denial of benefits claim." _Id._ In response to the plaintiff's argument that because she sought equitable relief under Section 502(a)(3) and damages under 502(a)(1) the claims were not duplicative, Judge Cooper wrote that the equitable relief **[*11]** sought "does not constitute 'additional relief' otherwise not provided for in Section [502(a)(1)]. Instead, this type of relief is _specifically_ provided for and contemplated by the language in Section [502(a)(1)]." 2006 U.S. Dist. LEXIS 53720, [WL] at *24 (emphasis in original).

Additionally, in _McCoy v. Bd. of Trustees of Laborers' Int'l Union Loc. No. 222,_ 188 F.Supp.2d 461, 472, fn. 10 (D.N.J. 2002), the plaintiff prevailed on certain claims under ERISA, but Judge Orlofsky granted defendant's motion for summary judgment on the claim of breach of fiduciary duty, holding that the plaintiff could not receive anything under that claim that the court had not already awarded him under his claim for benefits. "Equitable relief for a breach of fiduciary duty claim is not appropriate in that circumstance." _Id._

The amended complaint contains no indication that Zahl's claim of breach of fiduciary duties is distinct from his claim for benefits in Count Two, which asserts that as the assignee of unspecified patients, he did not receive all the benefits he was due under these patients' health benefit plans. Under this framework, an interpretation or application of ERISA would be unnecessary. _See Harrow,_ 279 F.3d at 254 (where **[*12]** claim calls for interpretation and application of benefits plan, it is a claim for benefits, not breach of fiduciary duty). While § 502(a)(3) creates a cause of action for breach of fiduciary duties imposed by ERISA, the Supreme Court has held that it is a "safety net," or "catch-all" provision allowing for "appropriate equitable relief for injuries caused by

violations that § 502 does not elsewhere adequately remedy." *Varity Corp*, 516 U.S. at 512. Moreover, unlike the plaintiffs in *Morley* and *McCoy,* Zahl does not even seek different forms of relief in Count Two and Count Five. Instead, he seeks damages in both, further establishing the impermissibly duplicative nature of the two claims and that § 502(a)(3) is unavailable because he does not seek "additional relief" otherwise not provided for in § 502(a)(1). Zahl's claim in Count Five, which will provide him no relief additional to that which he may receive in Count Two, is dismissed.

## IV. Conclusion

For the foregoing reasons, Cigna's motion to dismiss Counts One, Three, Four and Five of the amended complaint is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

## ORDER

For the reasons expressed  **[\*13]** in the opinion filed herewith, and with good cause appearing;

**IT IS** on this 31st day of March, 2010 hereby

**ORDERED** that Cigna Corporation's motion [D.E. 14] to dismiss Counts One, Three, Four and Five of Zahl's amended complaint [D.E. 11] is **granted.**

/s/ Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.

# EXHIBIT G

<u>**Citation # 5**</u>
<u>**2001 US Dist Lexis 20103**</u>

🛈 Cited , As of May 20 , 2013

LOUIS SCIOTTO and JOHN SCIOTTO, Plaintiffs, v. UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA INC., d/b/a AETNA U.S. HEALTHCARE, Defendant.

CIVIL ACTION No. 01-CV-4973

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2001 U.S. Dist. LEXIS 20103; 27 Employee Benefits Cas. (BNA) 1684

December 5, 2001, Decided

**DISPOSITION:** Motion to remand was denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff's, father and injured son, filed an action in the Court of Common Pleas of Delaware County, Pennsylvania. They demanded payment of medical bills by defendant benefit plan administrator. The benefit plan administrator removed the matter and asserted that the state common law claims were preempted by the Employment Retirement Income Security Act of 1974 (ERISA), <u>29 U.S.C.S. § 1001 et seq.</u> The father and son moved to remand the case.

**OVERVIEW:** The son suffered a spinal cord injury during high school wrestling practice that left him paralyzed and in need of substantial ongoing medical care. At the time of the injury the son was covered by a medical insurance policy issued to his father in connection with his employment. The father and son filed suit to recover medical bills and were told in settlement negotiations that the son would be covered in the future. After the case settled, the father and son were told that they would not have access to the same medical coverage, but would be covered under a less expansive policy. As a result, a portion of the medical bills were not paid. In their motion for removal to state court, the father and son argued that their state common law claims were not preempted by ERISA because they related to the future availability of an employee benefit plan, rather than the administration of the plan in place for them. The court held that the weight of authority showed that ERISA preempted state common law causes of action in which plan participants or beneficiaries alleged misrepresentations were made.

**OUTCOME:** The father and son's motion to remand was denied because ERISA preempted state law claims, and thus, the case was not removable.

**CORE TERMS:** beneficiary, preempted, preempt, misrepresentation, benefit plan, cause of action, breach of contract, removal, state common law, preemption, misrepresented, well-pleaded, settlement, coverage, estoppel, nursing, federal law, state law claims, state law, medical provider, claims asserted, unjust enrichment, preemption clause, civil action, enforcement provision, plan administrators, recover benefits, weight of authority, eligibility, removable

### LexisNexis® Headnotes

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General OverviewCivil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview

Civil Procedure > Removal > Basis > General OverviewCivil Procedure > Removal > Basis > General Overview

*HN1* See 28 U.S.C.S. § 1441(a).

Civil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional SourcesCivil Procedure > Jurisdiction > Jurisdictional Sources > Constitutional Sources
Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > General OverviewCivil Procedure > Jurisdiction > Subject Matter Jurisdiction > General Overview
Constitutional Law > The Judiciary > Jurisdiction > General OverviewConstitutional Law > The Judiciary > Jurisdiction > General Overview

*HN2* One category of cases for which federal district courts have original jurisdiction are cases arising under the United States Constitution, United States law or treaties of the United States. 28 U.S.C.S. § 1331. In general, a cause of action only arises under federal law when the face of a plaintiff's well-pleaded complaint raises federal law issues. Federal preemption, a defense, is usually not a part of a plaintiff's well-pleaded complaint and therefore ordinarily does not, in and of itself, allow for removal to federal court. However, the United States Supreme Court recognizes that in certain instances Congress may so completely preempt an area of law that state claims are effectively converted into claims arising under federal law.

Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & MisrepresentationInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Federal Jurisdiction & RemovalPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Federal Jurisdiction & Removal
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State LawsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws

*HN3* An action asserting only state law claims is completely preempted, and is therefore removable as an exception to the well-pleaded complaint rule, if the state law claims are preempted both by the Employment Retirement Income Security Act of 1974 's (ERISA), 29 U.S.C.S. § 1001 et seq., general preemption clause, ERISA § 514(a), as well as its provision that sets forth its civil enforcement mechanism, ERISA § 502(a).

Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & MisrepresentationInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > DefinitionsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > Definitions
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State LawsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws

*HN4* The Employment Retirement Income Security Act of 1974 's (ERISA), 29 U.S.C.S. § 1001 et seq., general preemption clause, ERISA § 514(a), preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan covered by ERISA. 29 U.S.C.S. § 1144(a). In this context, the term "state law" encompasses state common law causes of action, as it includes all laws, decisions, rules, regulations or other state action having the effect of law, of any state. 29 U.S.C.S. § 1144(c)(1). ERISA's civil enforcement provision, ERISA § 502(a), states in pertinent part that a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan. 29 U.S.C.S. § 1132 (a).

Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > General OverviewInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > General Overview
Labor & Employment Law > Wrongful Termination > General OverviewLabor & Employment Law > Wrongful Termination > General Overview
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State LawsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws

HN5 The Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., preempts a plan participant's state law cause of action for wrongful termination due to his employer's attempt to avoid paying pension benefits. Since the cause of action is predicated on the existence of an ERISA plan and a court's inquiry must therefore be directed to the plan, a court holds that such a cause of action relates to an ERISA plan under the meaning of § 514(a). In short, ERISA preempts state causes of action where there simply is no cause of action if there is no plan.

Contracts Law > Defenses > Fraud & Misrepresentation > General OverviewContracts Law > Defenses > Fraud & Misrepresentation > General Overview
Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & MisrepresentationInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General Overview

HN6 The weight of authority holds that the Employment Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., specifically ERISA § 514(a), expressly preempts state common law causes of action in which plan participants or beneficiaries allege that misrepresentations made or contracts entered into outside the terms of their benefits plan require that benefits be provided to them.

Contracts Law > Consideration > Promissory EstoppelContracts Law > Consideration > Promissory Estoppel
Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & MisrepresentationInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > ERISA Preemption > Bad Faith & Misrepresentation
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > RescissionPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Equitable Relief > Rescission

HN7 In the context of a suit against an Employment Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., benefit plan administrator, The United States Court of Appeals for the Third Circuit holds that, while suits against plan administrators are not preempted if they concern the quality of the medical treatment performed, they are completely preempted if they challenge the administration of or eligibility for benefits.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > General Overview

HN8 See 29 U.S.C.S. § 1132(a).

Insurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > General OverviewInsurance Law > Industry Regulation > Federal Regulations > Employee Retirement Income Security Act (ERISA) > General Overview

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State LawsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws

HN9 Because the comprehensive civil enforcement scheme established by Congress represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans, the Employment Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq., preempts state laws that effectively provide alternate enforcement mechanisms.


**COUNSEL: [*1]** For LOUIS SCIOTTO, PLAINTIFF: JAMES J. BYRNE, JR., ROBERT E. J. CURRAN, CURRAN & BYRNE, P.C., MEDIA, PA USA. BRIAN J. SELEYO, CURRAN & BYRNE, MEDIA, PA USA.

For JOHN SCIOTTO, PLAINTIFF: JAMES J. BYRNE, JR., ROBERT E. J. CURRAN, CURRAN & BYRNE, P.C., MEDIA, PA USA.

For UNITED STATES HEALTHCARE SYSTEMS OF PENNSYLVANIA, INC. d/b/a/ AETNA U.S. HEALTHCARE, DEFENDANT: CHARLES M. O'DONNELL, ELLIOTT, REIHNER, SIEDZIKOWSKI & EGAN, P.C., BLUE BELL, PA USA. PATRICIA C. COLLINS, ELLIOTT, REIHNER, SIEDZIKOWSKI & EGAN, P.C., BLUE BELL, PA USA.

**JUDGES:** RONALD L. BUCKWALTER, J.

**OPINION BY:** RONALD L. BUCKWALTER

**OPINION**


**MEMORANDUM**

BUCKWALTER, J.

December 5, 2001

Presently before this Court is Plaintiff Louis Sciotto and Plaintiff John Sciotto's ("Plaintiffs'") motion to remand this action to the Court of Common Pleas of Delaware County, Pennsylvania. For the reasons stated below, the motion is **DENIED**.

## I. STATEMENT OF FACTS

On January 10, 1997, Louis Sciotto suffered a severe spinal cord injury during his high school wrestling practice that left him paralyzed, dependent on a ventilator, and in need of substantial ongoing medical care. At the time of his injury, Louis **[*2]** Sciotto was covered by a medical insurance policy issued by Defendant to his father, John Sciotto, as a benefit in connection with the senior Sciotto's employment. Seeking redress for their son's injuries, John Sciotto and his wife filed suit in federal court on behalf of their son against the school district, its athletic director, its head wrestling coach, and the former student who was wrestling with their son at the time of his injury. While that litigation was pending, Defendant asserted a subrogation lien for medical expenses paid on behalf of Louis Sciotto in the amount of $ 1,087,000. Plaintiffs allege that in connection with settlement discussions in that case, Defendant represented that in 2000, Plaintiffs would be covered under the same medical insurance policy in effect for them during 1999. Subsequently, that litigation was settled, and Defendant was reimbursed its subrogation lien less attorney's fees.

After settlement, Plaintiffs were informed that, in fact, they would *not* have access to the same medical coverage in 2000, and would be covered under a less expansive policy which, they allege, restricts private duty nursing benefits critical to Louis Sciotto's care. **[*3]** As a result,

approximately $ 500,000 in medical bills for nursing care in 2000 were not paid by Defendant.

On July 25, 2001, Plaintiffs filed this action in the Court of Common Pleas of Delaware County, Pennsylvania, and filed an Amended Complaint in that Court on August 31, 2001. In their Amended Complaint, Plaintiffs allege state common law claims of breach of contract, misrepresentation, fraudulent misrepresentation, and unjust enrichment against Defendant for its failure in 2000 to maintain the same insurance policy coverage for them that was in effect during 1999. Plaintiffs allege that Defendant's representations as to this matter were critical to the settlement of the prior litigation.

On October 1, 2001, Defendant removed this matter to this Court, asserting that Plaintiffs' claims are preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and that the action is therefore removable under the complete preemption exception to the well-pleaded complaint rule. Plaintiffs now counter in their motion that the case is not so removable and must be remanded.

## II. LEGAL STANDARD

_HN1_ By statute, "any **[*4]** civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). _HN2_ One category of cases for which federal district courts have original jurisdiction are cases "arising under the Constitution, law or treaties of the United States." 28 U.S.C. § 1331. In general, a cause of action only arises under federal law when the face of the plaintiff's well-pleaded complaint raises federal law issues. Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 53 L. Ed. 126, 29 S. Ct. 42 (1908). Federal preemption, a defense, is usually not a part of a plaintiff's well-pleaded complaint and therefore ordinarily does not, in and of itself, allow for removal to federal court. However, the Supreme Court has recognized that in certain instances Congress may so completely preempt an area of law that state claims are effectively converted into claims arising under federal law. See Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557, 20 L. Ed. 2d 126, 88 S. Ct. 1235 (1968). In Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987), **[*5]** the Supreme Court held that _HN3_ an action asserting only state law claims is _completely_ preempted, and is therefore removable as an exception to the well-pleaded complaint rule, if the state law claims are preempted both by ERISA's general preemption clause, § 514(a), _as well as_ its provision that sets forth its civil enforcement mechanism, § 502(a). Id. 481 U.S. at 62-67.

_HN4_ ERISA's general preemption clause, § 514(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). In this context, the term "State law" encompasses state common law causes of action, as it includes "all laws, decisions, rules, regulations or other state action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). ERISA's civil enforcement provision, § 502(a), states in pertinent part that "a civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132 **[*6]** (a).

## III. DISCUSSION

The first prong of the removal (or complete preemption) analysis concerns whether Plaintiffs' claims "relate to" an ERISA benefit plan so as to be expressly preempted by ERISA's general preemption clause, § 514(a). Plaintiffs argue that their state common law claims for breach of contract, misrepresentation, fraudulent misrepresentation, and unjust enrichment are not preempted because they "relate to" the _future availability_ of an employee benefit plan, rather than the administration of a plan in place for them. Plaintiffs contend that, although the phrase "relate to" has been interpreted in the normal, rather broad sense of the phrase, to mean "a connection with or reference to such a plan," Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97, 77 L. Ed. 2d 490,

103 S. Ct. 2890 (1983), in this case the connection with a plan is just too "tenuous, remote or peripheral" to be preempted by ERISA. Id. 463 U.S. at 100. Plaintiffs direct the Court to two cases in support of their argument: Greenblatt v. Budd Co., 666 F. Supp. 735 (E.D. Pa. 1987) and Albert Einstein Med. Ctr. v. Action Mfg. Co., 697 F. Supp. 883 (E.D. Pa. 1988). **[*7]** Unfortunately for Plaintiffs, Albert Einstein is notably inapposite to the facts of this case, and neither decision represents the weight of authority after the Supreme Court's decision in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990).

In Albert Einstein, an employer allegedly made representations to a medical provider that it would pay for all services rendered to its employee, when in fact the employee's benefit plan capped her amount of medical benefits. The medical provider sued the employer for recovery of the unpaid expenses under a theory of estoppel. The Court held that ERISA did not preempt the medical provider's estoppel claim because, it reasoned, the claim did not turn on any interpretation of the rights of - and in fact was completely independent from - the beneficiary's *actual* rights under the plan. Albert Einstein, 697 F. Supp. at 884. In contrast, in the case before this Court, Plaintiffs are beneficiaries of a plan seeking to recover benefits pursuant to the terms of the plan under which they were covered in 1999, and, they allege, under which they should have been covered in 2000. **[*8]** ¹

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

1 Greenblatt is more similar to the case at bar. In Greenblatt, the court held that ERISA did not preempt a beneficiary's state law claim of misrepresentation against his employer for allegedly promising the beneficiary that his pension benefit plan would be made equal to the benefits provided to similarly-salaried employees who were covered under a different plan. However, as discussed infra, that case does not represent the weight of authority after Ingersoll-Rand.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

However, the Supreme Court has provided additional guidance in this area that postdates both Albert Einstein and Greenblatt. In Ingersoll-Rand, the Court found that *HN5* ☐ERISA preempted a plan participant's state law cause of action for wrongful termination due to his employer's attempt to avoid paying pension benefits. Since the cause of action was predicated on the existence of an ERISA plan and the court's inquiry must therefore be directed to the plan, the Court found that such a cause of action "relate[d] to" an **[*9]** ERISA plan under the meaning of § 514(a). Ingersoll-Rand, 498 U.S. at 139-140. In short, the Court held, ERISA preempts state causes of action where "there simply is *no* cause of action if there is no plan." Id. 498 U.S. at 140 (emphasis in original). ² Plaintiffs' claims in the case before this Court similarly depend upon the existence of an employee benefit plan, and similarly direct the Court's inquiry to the terms of the two plans at issue. Plaintiffs' contention that their claims concern the future availability of a plan, as opposed to the administration of a plan in place, is therefore a distinction that makes no difference under Ingersoll-Rand.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

2 The Court continues to cite with approval this category of ERISA-preempted state law. See, e.g., DeBuono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 815 n.14, 138 L. Ed. 2d 21, 117 S. Ct. 1747 (1997).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Accordingly, after Ingersoll-Rand, *HN6* ☐the weight of authority holds that under § 514(a), ERISA **[*10]** expressly preempts state common law causes of action in which plan participants or beneficiaries allege that misrepresentations made or contracts entered into outside the terms of their benefits plan require that benefits be provided to them. ³ While most of these cases involve suits against employers, the reasoning behind these decisions is equally applicable to suits against

ERISA benefit plan administrators, such as Defendant. Such an analysis is also compatible with the general distinction recently clarified by [HN7] the Third Circuit - that, while suits against plan administrators are not preempted if they concern "the quality of the medical treatment performed," they are completely preempted if they challenge "the administration of or eligibility for benefits." Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272-273 (3d Cir. 2001).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

3 See, e.g., Buxton v. Consol. R. Corp., 1999 U.S. Dist. LEXIS 186, No. 98-2409, 1999 WL 46610 (E.D. Pa. Jan. 6, 1999)(ERISA preempts breach of contract, negligent misrepresentation and promissory estoppel claims by employee against employer when employer allegedly misrepresented that it would rescind employee's application for voluntary separation program that terminated employee's ability to participate in ERISA plan if employee obtained employment elsewhere within company while application was pending); Penyak v. UNUM Life Ins. Co. of America, 1998 U.S. Dist. LEXIS 5023, No. 97-2117, 1998 WL 171213 (D. Kan. Mar. 12, 1998) (ERISA preempts breach of contract, negligent misrepresentation and promissory estoppel claims by beneficiary against employer when employer allegedly misrepresented that employee would qualify for disability insurance coverage); Wassil v. Advanced Tech. Labs., Inc., 1996 U.S. Dist. LEXIS 6107, No. 95-6777, 1996 WL 238688 (E.D. Pa. May 7, 1996)(ERISA preempts breach of contract and unjust enrichment claims by employee against employer when employer failed to provide retirement plan benefits allegedly due upon corporate sale pursuant to employee's written employment contract); Nealy v. U.S. Healthcare HMO, 844 F. Supp. 966 (S.D.N.Y. 1994)(ERISA preempts breach of contract and misrepresentation claims by beneficiary against plan administrator when administrator allegedly misrepresented that beneficiary's special health needs would be covered under plan); Bernatowicz v. Colgate-Palmolive Co., 785 F. Supp. 488 (D. N.J.), aff'd., 981 F.2d 1246 (3d Cir. 1992)(ERISA preempts negligent misrepresentation claim by beneficiary against employer when employer allegedly misrepresented plan eligibility rule and beneficiary lost opportunity for certain pension benefits).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*11]** One case in particular that presents a similar fact pattern to the case at bar is Franklin v. QHG of Gadsden, Inc., 127 F.3d 1024 (11th Cir. 1997). In that case, the plaintiff told a potential future employer that she would only accept a job offer if her husband, who required 24-hour home nursing care and was receiving that care pursuant to the benefit plan of his former employer, would have access to the same level of care under the benefit plan provided by her new employer. After receiving assurances that her husband would be "grandfathered" into immediate eligibility for home nursing care under the new plan, she accepted employment. However, after her job began and her employer was subsequently bought, the plaintiff was notified that her employer's plan would be modified to exclude such coverage. The court held that the plaintiff's claims for fraud in the inducement, deceit, and misrepresentation were preempted by ERISA. 4 The court reasoned that the claims asserted were related to an ERISA plan because the benefits promised by the defendant and sought by the plaintiff were ERISA plan benefits, and because the claims would require a court to compare the benefits **[*12]** available under various ERISA plans. Id. 127 F.3d at 1028-1029. This is exactly what the claims in the present case call upon this Court to do.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

4 In fact, significantly, the court ruled that these claims were completely preempted under ERISA and therefore subject to removal to federal court. Id. 127 F.3d at 1029.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Finally, after Ingersoll-Rand, many courts have specifically rejected Greenblatt and Albert Einstein. See, e.g., Bernatowicz, 785 F. Supp. at 493 ("Greenblatt ... is not critically distinguishable from the present case; however, I decline, as did the Seventh Circuit in Lister v. Stark, 890 F.2d 941 (7th

Cir. 1987), to follow Greenblatt here."); Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund, 785 F. Supp. 536 (W.D. Pa. 1992); Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co., 1992 U.S. Dist. LEXIS 16825, No. 92-1520, 1992 WL 236257 at *7 (E.D. Pa. Sept. 3, 1992)(declining **[\*13]** to follow Albert Einstein in light of Ingersoll-Rand); Ricci v. Gooberman, 840 F. Supp. 316, 318 n.4 (D. N.J. 1993); Penyak, 1998 U.S. Dist. LEXIS 5023, 1998 WL 171213 at *6 ("The authorities cited by plaintiff, e.g., Greenblatt ... have not been followed by most courts.")

In light of all the above, this Court finds that ERISA preempts Plaintiffs' claims under § 514(a) because they "relate to" an ERISA plan.

The second prong of the removal analysis concerns conflict preemption under the ERISA's civil enforcement provision, § 502(a). Plaintiffs did not direct any argument or case law to this issue in their motion. Again, this provision states in pertinent part that *HN8*☐"a civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a). This action falls neatly within this enforcement provision, since suit is being brought by plan beneficiaries who seek to recover the cost of medical bills due as benefits under the terms of the plan that Plaintiffs allege was - or should have been - applied to them at that time.

*HN9*☐Because the "comprehensive civil enforcement **[\*14]** scheme established by Congress represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans," the Court in Ingersoll-Rand also concluded that ERISA preempts state laws that effectively provide alternate enforcement mechanisms. Ingersoll-Rand, 498 U.S. at 142-145 (quoting Pilot Life v . Dedeaux, 481 U.S. 41, 54, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987)(citations omitted). The claims asserted by Plaintiffs are such state laws. As a result, the Court finds that Plaintiffs claims are preempted by this ERISA provision as well. Therefore, this matter is subject to complete preemption and removal under Metropolitan Life.

## IV. CONCLUSION

The Court finds that removal of this matter to this Court was proper pursuant to 28 U.S.C. § 1441 (a) and 28 U.S.C. § 1331 because the state common law claims asserted by Plaintiffs are completely preempted by ERISA. For this reason, Plaintiffs' motion for remand is denied.

An appropriate order follows.

## ORDER

AND NOW, this 5th day **[\*15]** of December 2001, upon consideration of Plaintiffs' Motion to Remand (Docket No. 5) and Defendant's response thereto (Docket No. 6) it is hereby **ORDERED** that Plaintiff's Motion is **DENIED**.

In accordance with the court approved stipulation of counsel, Plaintiff's response to Defendant's pending Motion to Dismiss is due on or before December 26, 2001.

BY THE COURT:

RONALD L. BUCKWALTER, J.

# EXHIBIT H

**Citation # 6**
**2006 US Dist Lexis 48151**

Ⓐ Analysis , As of May 20 , 2013

☐ View Available Briefs and Other Documents Related to this Case

TEMPLE UNIVERSITY HOSPITAL, INC., Plaintiff v. GROUP HEALTH, INC., OXFORD HEALTH PLANS, INC., and MULTIPLAN, INC., Defendants

CIVIL ACTION NO. 05-102

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2006 U.S. Dist. LEXIS 48151

July 13, 2006, Decided
July 17, 2006, Filed

**PRIOR HISTORY:** Temple Univ. Hosp., Inc. v. Group Health, Inc., 2006 U.S. Dist. LEXIS 1548 (E.D. Pa., Jan. 12, 2006)

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff hospital sought to recover amounts from defendant health insurers for the treatment of two patients. The insurers filed motions for summary judgment.

**OVERVIEW:** The hospital contended that the insurers owed it substantial amounts for the treatment of two patients. The insurers contended that the claims were preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., and that the hospital failed to acquire a valid assignment in order to have standing to sue under ERISA. The court agreed with the insurers and granted summary judgment. With respect to ERISA preemption, the hospital contended that a participator access agreement controlled and that, therefore, there was no need to examine the underlying health plans, which were admittedly ERISA plans. The court found that the hospital failed to offer evidence that it was a participating provider under the plans and did not contradict that a payment from one of the insurers was made pursuant to a non-participating provider option. The court concluded that the underlying ERISA plan had to be examined in order to determine if insurers had properly paid certain claims. Therefore, the hospital's claims were preempted by ERISA. The court then found that the hospital did not have valid patient assignments, and therefore had no standing to bring ERISA claims.

**OUTCOME:** The court granted the insurers' motions for summary judgment.

**CORE TERMS:** provider, eligibility, participating, discount, anti-assignment, preemption, preempted, network, summary judgment, non-participating, state law, oral argument, assignment of rights, benefit plans, beneficiary, preempt, negotiated, utilize, state laws, health insurance, contract claims, written consent, obligated, genuine, health care providers, assignment of causes, services rendered, breach of contract, cause of action, non-moving

### LexisNexis® Headnotes

Civil Procedure > Summary Judgment > Standards > General OverviewCivil Procedure > Summary Judgment > Standards > General Overview

HN1 Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. A factual dispute is material if it might affect the outcome of the case under governing law.

Civil Procedure > Summary Judgment > Burdens of Production & Proof > General OverviewCivil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview
Civil Procedure > Summary Judgment > EvidenceCivil Procedure > Summary Judgment > Evidence

HN2 A party seeking summary judgment always bears the initial responsibility to inform the court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. After the moving party has met its initial burden, the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to make a factual showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Under Rule 56, the court must view the evidence presented in the motion in the light most favorable to the opposing party.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General Overview

HN3 Section 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1144 (a), was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among states or between states and the federal government.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General Overview

HN4 The United States Court of Appeals for the Eleventh Circuit formulated the prevailing standard for determining whether a plan within the meaning of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., has been established, stating a plan, fund, or program under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State LawsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > State Laws

HN5 There is no viable dispute as to the legal proposition of whether the Employee Retirement Income Security Act of 1974 (ERISA) preempts state law breach of contract claims that relate to an employee benefit plan. Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted. More specifically, § 514(a) of ERISA, 29 U.S.C.S. § 1144(a), preempts any and all state laws insofar as they may now or hereafter relate to any employee benefit plan covered by the statute.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security

Act (ERISA) > Federal Preemption > General Overview

*HN6* Suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1144(a). Thus, claims that attack pure eligibility decisions are pre-empted .

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary DutyPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Breach of Fiduciary Duty
Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General Overview

*HN7* Pre-emption under § 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1144(a), must be distinguished from complete pre-emption under § 502(a) of ERISA, 29 U.S.C.S. § 1132(a). Only the latter permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule. Under § 514(a), ERISA supersedes state laws that relate to an ERISA plan. 29 U.S.C.S. § 1144(a). Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan BenefitsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits

*HN8* Almost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1132(a), where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan BenefitsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits

*HN9* Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1132 (a), allows a participant or beneficiary to bring a civil action, inter alia, to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General OverviewPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Federal Preemption > General Overview

*HN10* The pleading of a breach of contract claim in the absence of a properly pleaded claim under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.S. § 1001 et seq., can be grounds for dismissal when ERISA preempts the contract claim.

Pensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan BenefitsPensions & Benefits Law > Employee Retirement Income Security Act (ERISA) > Civil Claims & Remedies > Causes of Action > Suits to Recover Plan Benefits

*HN11* An express, anti-assignment provision bars any assignment of rights from plan participants to health care providers under a plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.S. § 1001 et seq.

☐**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)
U.S. District Court Pleading(s)

**COUNSEL: [\*1]** For TEMPLE UNIVERSITY HOSPITAL, INC., Plaintiff: HOWARD R. MANILOFF, TABAS & ROSEN, P.C., PHILADELPHIA, PA.

For GROUP HEALTH, INC., Defendant: ANTHONY E. CREATO, PHILADELPHIA, PA; MICHAEL H. BERNSTEIN, SEDGWICK DETERT MORAN & ARNOLD LLP, NEW YORK, NY.

For OXFORD HEALTH PLANS, INC., Defendant: CHRISTOPHER P. MASSARO, DONALD A. OTTAUNICK, MICHAEL A. CHAGARES, COLE SCHOTZ MEISEL FORMAN & LEONARD P.A., HACKENSACK, NJ; JOSEPH P. BRADICA, KLEHR HARRISON, PHILADELPHIA, PA.

For MULTIPLAN, INC., Defendant: BRIAN T. MUST, METZ SCHERMER & LEWIS, PITTSBURGH, PA; MICHAEL P. ROBIC, II, METZ LEWIS, LLC, PITTSBURGH, PA.

For GROUP HEALTH, INC., Cross Defendant: MICHAEL H. BERNSTEIN, SEDGWICK DETERT MORAN & ARNOLD LLP, NEW YORK, NY.

For OXFORD HEALTH PLANS, INC., Cross Defendant: CHRISTOPHER P. MASSARO, COLE SCHOTZ MEISEL FORMAN & LEONARD P.A., HACKENSACK, NJ.

For OXFORD HEALTH PLANS, INC., Cross Claimant: CHRISTOPHER P. MASSARO, COLE SCHOTZ MEISEL FORMAN & LEONARD P.A., HACKENSACK, NJ.

For TEMPLE UNIVERSITY HOSPITAL, INC., Counter Defendant: HOWARD R. MANILOFF, TABAS & ROSEN, P.C., PHILADELPHIA, PA.

**JUDGES:** GENE E.K. PRATTER, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gene E. K. Pratter

**OPINION**

**MEMORANDUM AND ORDER**

Gene E.K. Pratter, J.

July 13, 2006

**[\*2]** Temple University Hospital (Temple) is a substantial regional health system that seeks to recover $ 10,950,162.12, plus interest and costs, for the organ transplant treatment of Fred Tremarcke from September 6, 2002 to November 26, 2003 and again from March 24, 2004 to April 28, 2004 ("Tremarcke claim"). Temple also seeks $ 103,753.96 for the care extended to Suzanne Griffin from January 14, 2003 through January 17, 2003 ("Griffin claim"). Temple has sued the three health insurers or related plan administrators, namely Oxford Health Insurance, Inc., (Oxford), [1] Group Health, Inc. (GHI), and MultiPlan, Inc. (MultiPlan), that Temple asserts are obligated to reimburse Temple for the treatment of Mr. Tremarcke and Ms. Griffin. GHI and Oxford filed motions for summary judgment, which MultiPlan has adopted. [2] Temple opposed the motions, and all counsel ably presented oral argument. Because the Court concludes (1) that Temple's claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1001 et seq., and (2) that Temple has failed **[\*3]** to acquire a valid assignment in order to have standing to sue under ERISA, the motions shall be granted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

1 Temple incorrectly named Oxford as "Oxford Health Plans, Inc." in the Amended Complaint.

2 MultiPlan filed a motion stating "MultiPlan, Inc. ("Movant") respectfully Adopts and Incorporates by Reference Herein the Motions for Summary Judgment and Supporting Memorandum filed on behalf of Group Health, Inc. (Docket No. 53) and Oxford Health Insurance, Inc. (Docket No. 65), dismissing Plaintiffs claims for the reasons set forth at length therein."

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## I. FACTUAL BACKGROUND

The following factual recitation is drawn from the parties' submissions to the Court, as well as uncontested the facts from the record.

### A. The UWF Plans

GHI and the United Welfare Fund ("UWF") entered into a group contract ("GHI's UWF Plan") to provide health insurance benefits to UWF participants who were members of the United Service Workers of America labor union. GHI's UWF Plan provided for different payment schedules **[*4]** for participating and non-participating healthcare providers. Under GHI's UWF Plan, participating providers are medical practitioners or facilities that agreed to accept GHI's scheduled or negotiated rates as reimbursement for services rendered to covered members; non-participating providers are defined as medical providers or facilities that do not have an agreement with GHI to limit charges to its subscribers. Oxford also entered into a Group Enrollment Agreement which became effective in March 2003, with the UWF and issued to each UWF insured an Oxford Certificate of Coverage and Summary of Benefits which outlines the terms and conditions of that policy. (Together, the Group Enrollment Agreement and Certificate of Benefits are referred to as "Oxford's UWF Plan.")

### B. The Discount and Access Agreements

MultiPlan is a preferred provider organization ("PPO") that maintains a network of health care facilities and providers through direct, separate agreements it enters into with such hospitals and health care providers, pursuant to which these entities agree to accept discounted fees for services in exchange for the right to participate in the PPO network. In 1998, Temple and **[*5]** MultiPlan entered into a "Prompt Payment and Discount Agreement" (Discount Agreement) by which Temple became a MultiPlan provider within the Multiplan network. The Discount Agreement provides that "[MultiPlan] shall reimburse [Temple] 90% of billed charges within thirty (30) days of receipt of claim or 100% of billed charges shall be due."

Both GHI and Oxford entered into Access Agreements with MultiPlan which enabled GHI and Oxford to access MultiPlan's network of healthcare facilities and contract rates. Oxford and MultiPlan entered into their Access Agreement entitled "HMO Cost Savings Agreement" in 1992 and subsequently amended the agreement seven times between September 2002 to January 2004. The First Amendment to the Access Agreement with Oxford acknowledges that "Client [Oxford] has the right to access [MultiPlan's] network of health care providers . . . ." GHI entered into its Access Agreement with MultiPlan in 1997, and that Agreement states that "GHI shall have the right to access [MultiPlan's] Contract Rates on Behalf of its Participants."

To summarize the contractual relationships between and among the parties, Temple has a Discount Agreement with MultiPlan, **[*6]** and MultiPlan has Access Agreements with GHI and Oxford which allow GHI and Oxford to access the discount rates structure that Temple provides to Multiplan. There are no contracts directly between Temple and GHI or between Temple and Oxford.

## C. Temple's Claims

### 1. The Tremarcke Claims

Temple seeks payment for Mr. Tremarcke's medical expenses from September 6, 2002 through March 31, 2003, from GHI, and payment for Mr. Tremarcke's expenses incurred from April 1, 2003 to November 26, 2003 from either GHI or Oxford, and finally payment for expenses from March 24, 2004 through April 28, 2004 from Oxford. Temple asserts that MultiPlan is jointly and severally liable for the Tremarcke claims during each time period as well. Although not specified by the parties, the medical treatment and services rendered to Mr. Tremarcke appear to relate primarily to an organ transplant. Transcript of Oral Argument on Motion to Dismiss at 44-45, Nov. 2, 2005.

GHI denied the claims submitted by Temple for Mr. Tremarcke's treatment, contending that Mr. Tremarcke was improperly enrolled in the GHI UWF Plan because he failed to satisfy eligibility criteria set forth in the applicable UWF Plan **[*7]** documents. Mr. Tremarcke and the UWF are currently contesting GHI's determination of ineligibility in a separate lawsuit pending in the Eastern District of New York, captioned John Ames and Michael Pantony, as Trustees of the United Welfare Fund-Welfare Division, Fred Tremarcke, and the United Welfare Fund-Welfare Division v. Group Health Incorporated, Civil Action No. 03-5055. Oxford declined its right to use the Access Agreement when it received bills from Temple for treatment of Mr. Tremarcke from March to November of 2003, claiming that before paying claims from Temple, Oxford learned about the potential eligibility issues and had not made a final determination as to Mr. Tremarcke's eligibility when this lawsuit was commenced.

### 2. The Griffin Claims

Ms. Griffin was an eligible participant under GHI's UWF Plan in January 2003. From January 14, 2003, to January 17, 2003, Ms. Griffin underwent an incisional hernia repair at Temple. Temple submitted charges to GHI for Ms. Griffin's hospitalization and surgery in the total amount of $ 103,753.66, which GHI considered a "high dollar" claim. The Griffin claim was evaluated by GHI in order to determine the appropriate payment **[*8]** under the UWF Plan documents. On July 3, 2003, GHI sent Temple a check in the amount of $ 12,650.00 for the Griffin claim, which Temple negotiated shortly thereafter. GHI's payment notice accompanying the check indicated, *inter alia*, that the "TOTAL CHARGES" were $ 103,753.96, that GHI's "TOTAL PAYMENT" was $ 12,650.00, and identified the check number for this amount. Temple claims that GHI is responsible for the remaining $ 91,103.96 of the Griffin claim and that MultiPlan is jointly and severally liable for the full unpaid balance.

## II. DISCUSSION

### A. The Legal Standard

*HN1* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is "material" if it **[*9]** might affect the outcome of the case under governing law. Id.

*HN2* A party seeking summary judgment always bears the initial responsibility to inform the court of the basis for the motion and to identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at

325.

After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Summary judgment is appropriate if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. **[*10]** Under Rule 56, the Court must view the evidence presented in the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## B. ERISA Preemption

GHI and Oxford argue that Temple's claims relate to the UWF Plans and, therefore, are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U. S. C. § 1001 et seq. **HN3** "Section 514(a) [of ERISA] was intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990). Temple, however, argues that GHI and Oxford are obligated to use the Access Agreement and that to resolve the dispute the Court need only consider the Access Agreement rather than the underlying UWF Plans. Thus, Temple contends ERISA preemption issues are not implicated here.

There is no dispute as to whether the GHI and Oxford UWF Plans are employee welfare benefit plans within the meaning of **[*11]** ERISA. See 29 U.S.C. § 1002(1). **HN4** The Eleventh Circuit Court of Appeals formulated the prevailing standard for determining whether a "plan" within the meaning of ERISA has been established, stating "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Jones v. Aetna Life Ins. Co., No. 01-2476, 2002 U.S. Dist. LEXIS 15428 at *16 (E.D. Pa. Aug. 14, 2002) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982). Here, undisputed facts show that the GHI and Oxford UWF Plans meet this criteria. Mr. Tremarcke's and Ms. Griffin's employers each entered into a collective bargaining agreement with the United Service Workers of America which, in turn, through the UWF, entered into contracts with GHI and then Oxford in Mr. Tremarcke's case and with GHI only, in Ms. Griffin's case.

**HN5** There is no viable dispute as to the legal proposition of whether ERISA preempts state law breach of contract claims that relate to an employee benefit plan. "[A]ny **[*12]** state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). More specifically, § 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. Ingersoll-Rand Co., 498 U.S. at 138. It was held recently that ERISA preempts state contract law in a case nearly identical to this one. Temple Univ. Children's Med. Ctr. v. Group Health, Inc., 413 F. Supp. 2d 530, 536 (E.D. Pa. 2006).

## 1. Tremarcke Claims and ERISA Preemption

Both GHI and Oxford maintain that Mr. Tremarcke's eligibility is at issue and, thus, they argue that interpretation of the underlying UWF Plans is essential to Temple's claim for Mr. Tremarcke's benefits. According to these Defendants, because Temple's state law claim involves issues of coverage and eligibility pursuant to an employee benefit plan, the Tremarcke **[*13]** claim necessarily is preempted by ERISA.

The Third Circuit Court of Appeals has confirmed that [HN6] "suits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)." Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 278 (3d Cir. 2001). Thus, "claims that attack pure eligibility decisions are pre-empted . . . ." Nguyen v. Healthguard of Lancaster, Inc., 282 F. Supp. 2d 296, 308 (E.D. Pa. 2003) (because plaintiff claimed she had not received a benefit to which she believed she was entitled, "[h]er claim is therefore pre-empted.").

Temple first appears to concede the preemption argument by stating that "[b]ecause GHI contests Tremarcke's eligibility, it may be necessary for this Court to look beyond the MultiPlan Agreement and to the plan documents to determine whether GHI is liable for this claim. For this reason Pascack Valley Hospital [388 F.3d 393 (3d Cir. 2004)] [3] suggests that [Temple's] state law claim may be pre-empted by ERISA." Temple's Reply to GHI's Motion for Summary Judgment at 12. **[*14]** However, Temple resists the same analysis in regard to Oxford's contention that Mr. Tremarcke's eligibility issues similarly preempt Temple's state law claim. Rather, in that regard, Temple contends that because Oxford concedes it has not made a final determination as to Mr. Tremarcke's eligibility, it cannot now "cryptically" allude to "potential issues clouding his eligibility." Temple's Reply to Oxford's Motion for Summary Judgment at 4. Temple asserts that "the fact that [Mr.] Tremarcke was ineligible under the Plan at the time it was insured by GHI has no bearing on his entitlement to benefits from Oxford." Id. at 4, n. 2.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[3] The court in Pascack Valley stated "were coverage and eligibility disputed in this case, interpretation of the [ERISA] Plan might form an 'essential part' of the Hospital's claims." Pascack Valley, 388 F.3d at 402.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Oxford responds to this argument by arguing that a change in insurance providers has no impact on the issues regarding Mr. Tremarcke's eligibility. **[*15]** Oxford contends that the plan documents for the policy issued by Oxford have the same eligibility requirement as the plan issued by GHI. Both GHI and Oxford note that their Access Agreements with MultiPlan specifically establish that GHI and Oxford are responsible for making eligibility determinations. [4]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[4] Oxford maintains that Mr. Tremarcke did not suddenly become eligible for benefits when "Oxford came on the risk for the UWF plan . . . ." Tr. of April 11, 2006 Oral Argument at 41-42. When asked by the Court at oral argument how the separate documents governing Oxford's UWF plan affect eligibility, Temple's counsel responded "Again, I don't know. It sets forth its own eligibility criteria terms that are separate from those that were in effect prior when GHI had the plan. Again, I don't know, Oxford has never told us why they've denied it, all they said is there's a cloud over his eligibility." Id. at 84.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

As Temple anticipated, this Court finds that, pursuant to ERISA, Mr. Tremarcke's eligibility issues **[*16]** with GHI preempt Temple's state law claims. Furthermore, because Temple has failed to demonstrate any difference in the eligibility requirements for GHI's UWF Plan and Oxford's UWF Plan, Mr. Tremarcke's eligibility issues also result in ERISA preemption of Temple's claim against Oxford.

**2. Griffin Claims and ERISA Preemption**

**a. Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan**

Turning to the Griffin claims, Temple asserts that Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), supports its proposition that its claims are not preempted by ERISA. Temple's reliance on Pascack Valley is unfounded. In Temple Univ. Children's Med. Ctr. v. Group Health, Inc., 413 F. Supp. 2d 530 (E.D. Pa. 2006) (herein "TUCMC"), the court addressed the difference between what the Third Circuit Court of Appeals held in Pascack Valley and the effect of ERISA preemption in a substantively identical contract dispute between Temple University Children's Hospital, GHI, and MultiPlan. The TUCMC court first distinguished Pascack Valley, explaining that while Pascack **[*17]** Valley involved a hospital suing an employee benefit plan alleging breach of contract for failure to pay for services rendered to one of the plan's beneficiaries, the suit was originally filed in the state court. Id. at 536-37. Furthermore, the court explained that in Pascack Valley, when the defendant attempted to remove the action to federal court on the ground that it was preempted by § 514 of ERISA, the Court of Appeals remanded it to the state court since under the well-pleaded complaint rule, the plaintiff had not stated an ERISA claim, and could not state an ERISA claim, because "the plaintiff in that case was not a beneficiary, participant, or fiduciary under ERISA, and it did not have standing to bring such a claim." Id. at 537. Most significantly for present purposes, the TUCMC court highlighted that the "Court of Appeals [in Pascack Valley] did not preclude defendants from asserting ERISA preemption as a complete defense to the action once it was returned to the state court." Id.

The Pascack Valley court further explained how preemption operates under ERISA:

> **HN7** Pre-emption under § 514(a) of ERISA, 29 U.S.C. § 1144(a) **[*18]** , must be distinguished from complete pre-emption under § 502(a) of ERISA, 29 U.S.C. § 1132 (a). Only the latter permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule. Under § 514(a), ERISA supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. § 1144(a). Unlike the scope of § 502(a), which is jurisdictional and creates a basis for removal to federal court, § 514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court.

Pascack Valley, 388 F.3d 393, 398 at n.4 (citing Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000)).

"Pascack Valley merely concerned the issue of removal and remand . . . the Court of Appeals did not hold that the plaintiff stated a valid contract claim or that the claim was not preempted by ERISA." TUCMC, at 537. Accordingly, despite Temple's protestations here, Pascack Valley does not insulate its claims from the effects of ERISA preemption. Because the parties here are diverse, there is no issue concerning the Court's subject matter **[*19]** jurisdiction, making the Pascack Valley holding inapposite. Id. Therefore, this Court must determine whether the Griffin claim does in fact "relate to" the GHI UWF Plan.

## b. Participating Providers vs. Non-Participating Providers under GHI's UWF Plan

In order to demonstrate how the Griffin claim "relates" to the ERISA plan and is therefore preempted, GHI argues that the Court cannot resolve Temple's claims concerning Ms. Griffin without directing its inquiry to the GHI UWF Plan because GHI used a pricing scheme for non-participating providers as set out in its UWF Plan, as opposed to their Access Agreement with MultiPlan to pay the Griffin claims. Temple, however, asserts that it is a participating provider and, therefore, the MultiPlan Access Agreement and Discount Agreement, rather than the UWF Plan, control the dispute.

GHI's UWF Plan defines a participating provider as a provider "who has agreed to accept GHI's scheduled or negotiated rates as payment in full for covered services and is a member of the GHI Participating Provider network(s) that participate under this Policy." Therefore, Temple argues that,

with Temple as a participating provider, the Court need **[*20]** only reference the agreements between Temple and MultiPlan, and between MultiPlan and GHI, to determine if the proper payments were made by GHI. Temple argues that it met the requirement that it "accept GHI's scheduled or negotiated rates as payment in full for covered services" by entering into the Discount Agreement with MultiPlan that in turn allowed GHI to pay a discounted rate through its Access Agreement with MultiPlan that Temple agreed to accept. However, in contrast, GHI argues that Temple is a non-participating provider and, therefore, the GHI UWF Plan controls.

The GHI UWF Plan determines the allowed charge for registered bed patients in a non-participating hospital to be the lesser of the following:

> (1) The negotiated rate between GHI and the Hospital of facility;

> (2) The negotiated rate between the Hospital or facility and any network arrangements with which GHI has an agreement;

> (3) The Hospital or facility's published rate for a semi private room;

> (4) For out of area Hospitals and facilities, the Hospital's or facility's published rate for a semi-private room, not to exceed the average charge of GHI Participating Hospitals and skilled nursing **[*21]** facilities for the same or similar services; or

> (5) Charges.

GHI explains that payment of the Griffin claim pursuant to option (2) would require GHI under the Access Agreement with Temple to pay 90% of the $ 103,753.96 charged by Temple. However, GHI claims that after comparing the charge to GHI's New York-based participating hospitals, the average charge for the service was $ 12,650.00. Thus, in accordance with option (4) and GHI's commitment under its UWF Plan to pay the lesser amount from among the five options, GHI sent a check for $ 12,650.00 to Temple.

In response, Temple argues that because GHI failed to produce a list of participating providers, there is a genuine issue of material fact concerning whether Temple is in fact a participating provider. Temple argues that it is a participating provider because the Discount Agreement between Temple and MultiPlan states in paragraph 3 that "Plan shall refer to Member Providers in its marketing materials as participating providers." (Temple did not explain that "Plan" refers to MultiPlan, not GHI.) Temple also argues that it is a participating provider because MultiPlan agreed in the Access Agreement to allow GHI to use **[*22]** MultiPlan's name and logo, and to provide GHI with a directory of MultiPlan facilities and a toll free telephone number for MultiPlan facilities. Finally, Temple asserts that the fact that GHI's explanation of benefits for Ms. Griffin did not show that she was responsible for any coinsurance, deductibles or excess charges is a "smoking gun," indicating that GHI treated Temple as a participating provider because GHI's UWF Plan states that members would have to pay deductibles, co-insurance, and excess fees to non-participating providers.

These assertions are not relevant to the question of whether Temple was a participating provider or not. Addressing similar arguments in TUCMC, the court there concluded: "There is simply nothing in the agreements before the court or otherwise in the record that supports TUCMC's various arguments that it is a participating provider requiring GHI to pay the charges it seeks in the lawsuit." TUCMC, at 537. Likewise, here, Temple also fails to offer evidence that it was a participating provider under GHI's UWF Plan. Further, Temple does not offer any evidence that reasonably contradicts GHI's contention that its Griffin payment was made in accordance **[*23]** with option (4) of GHI's UWF Plan for payment to non-participating providers. Therefore, Temple has not shown that it is a participating provider and because the underlying ERISA Plan must be examined in order to determine if GHI properly paid the Griffin claim, Temple's claim is preempted

by ERISA.

### c. GHI's Obligations Under The Access Agreement

GHI argues the Access Agreement, properly interpreted, is a non-exclusive agreement to allow GHI to use MultiPlan's contract rates when it so chooses. GHI contends, as just discussed, that option (4) of its UWF Plan, rather than the Access Agreement, applies to the payments for the claims arising from Ms. Griffin's care because the MultiPlan Access Agreement was not used. Temple, however, asserts that in addition to Temple being a Participating Provider, the Access Agreement was mandatory and, therefore, GHI was obligated to utilize it for the Griffin payments, thus making an interpretation of the GHI UWF plan irrelevant and removing the dispute from under the umbrella of ERISA preemption.

GHI's interpretation of its Access Agreement with MultiPlan is based on the following provision in the Preamble of the Access Agreement: "WHEREAS, **[*24]** on behalf of its Participants or Customers, on a *non-exclusive basis*, GHI seeks access to [Multiplan's] Facilities and Contract Rates . . . ." (emphasis added). The Access Agreement refers to GHI's *right* to access MultiPlan Contract rates in several provisions. Temple would somehow have the Court interpret these provisions to mean that "the MultiPlan Network of Providers is available to GHI, as well as other payers," even though this provision is an explanation of GHI's rationale for entering into the Access Agreement with MultiPlan. Temple also argues that GHI was required under the Access Agreement to give notice if it intended not to use the MultiPlan discount, and that if it failed to do so, GHI would be obligated to pay the MultiPlan rate under the Agreement. As GHI properly points out, this notice provision only applies to claims that have already been repriced under the Multiplan Access Agreement which states that "[p]ayment is due for savings achieved regarding any repriced claim."

When the court in TUCMC analyzed similar arguments made by Temple's Children's Medical Center against GHI and MultiPlan, the court concluded that "to accept [the Children's Medical **[*25]** Center's] interpretation of GHI's agreement with MultiPlan would not only contradict its plain meaning but would also expose GHI to obligations in excess of what it had agreed to pay [under the ERISA plan]." TUCMC at 536. Concerning GHI's contention in this case that utilization of the Access Agreement is not mandatory, there is no reason for the Court here to come to a conclusion different from the conclusion reached in TUCMC. Therefore, state law breach of contract claims against GHI arising from the Griffin claim are preempted by ERISA because of GHI's utilization of pricing under its UWF Plan, rather than under the discount agreement with MultiPlan. [5]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[5] In reference to the Tremarcke claims, Oxford also claims that its Access Agreement does not require Oxford to utilize it in all cases where an Oxford member receives treatment from a Temple University Hospital facility. Oxford's Access Agreement states that it "has the right to access [MultiPlan's] network . . . ." Temple, however, points out that the Access Agreement also requires that "[i]n order to enable [MultiPlan] to perform its obligations hereunder [Oxford] will send to [MultiPlan] a clear copy of **all bills** received from Providers . . ." (emphasis added), arguing that, therefore, Oxford had no discretion as to whether a bill from a Network Provider should be submitted to MultiPlan for re-pricing. Oxford responds that because it did not utilize the Access Agreement, it was not obligated to send the bills to MultiPlan for repricing. Temple has offered no evidence that Oxford did utilize the Access Agreement.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### [*26] C. Standing under ERISA

The parties agree that even if the claims are preempted under ERISA, if an assignment of rights to a claim is made by a beneficiary or participant, the holder of the assignment may then proceed under ERISA. While the Third Circuit Court of Appeals has yet to explicitly find that an assignment

confers standing under ERISA, it has held that *HN8*☐"[a]lmost every circuit to have considered the question has held that a health care provider can assert a claim under § 502(a) [6] where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan . . . ." Pascack Valley, 388 F.3d at 401. Even though Temple has failed to clearly assert a cause of action under ERISA in its pleadings, the Court nonetheless will address Temple's contention that it has standing under ERISA. [7]

- - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[6] *HN9*☐Section 502(a) of ERISA allows "a participant or beneficiary" to bring a civil action, inter alia, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Pascack Valley at 400 (quoting 29 U.S.C. § 1132(a)(1)(B)). **[*27]**

[7] GHI's counsel stated during oral argument on the motions for summary judgment that "the plaintiff would need to actually amend his complaint to ask the Court to allow him to proceed under ERISA, he still hasn't done that." Tr. at 28. The Court notes that *HN10*☐the pleading of a breach of contract claim in the absence of a properly pleaded ERISA claim can be grounds for dismissal when ERISA preempts the contract claim. See e.g., Booz v. Unum Life Ins. Co., No. 93-2326, 1993 U.S. Dist. LEXIS 13143, *2 (E.D. Pa. 1993) (where plaintiff alleged breach of contract under Pennsylvania law, the court dismissed the claim because "ERISA supersedes the state law."). But because the parties here have thoroughly addressed the issue of assignment as though a proper claim under ERISA had been pled, the Court will address the issue.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## 1. The Anti-Assignment Clauses in the ERISA Plans

GHI and Oxford both argue that based on the plain language of their respective UWF Plans, assignments require the consent of GHI or Oxford. Even though Temple has produced assignment consent forms signed by **[*28]** Mr. Tremarcke and Ms. Griffin, which purport to assign their respective claims to Temple, GHI and Oxford argue that their consents have not been given in this case and, therefore, Temple does not have standing to sue to enforce any rights under ERISA.

The GHI UWF Plan Group Contract states:

> The health insurance benefits available under this Contract are personal to Members. They are not assignable. GHI in its sole discretion and only upon written consent may choose to honor an assignment. Any assignment without GHI's written consent shall be void.

The GHI Certificate of Health Insurance in its UWF Plan states:

> No Assignment. You cannot, without GHI's consent, assign any benefits or money due from GHI or any causes of action or rights to appeal benefits or claims determinations to any person, corporation, Hospital, or other organization. Any assignment by you will be void. Assignment means the transfer to another person or organization of your right to the services provided, your right to collect from GHI for those services, or your causes of action or rights to appeal benefits or claims determinations.

Oxford's UWF Plan states in section XI General **[*29]** Provisions:

> This Certificate is not assignable by Group without Our written consent. Any benefits under this Certificate are not assignable by any Member without Our written consent. In addition, [t]his Agreement shall not confer any rights or obligations on third parties

except as specifically provided herein.

Temple claims that based on decisions from the Fifth and Eighth Circuits Courts of Appeals, these anti-assignment provisions are not enforceable against healthcare providers. Interpreting a similar anti-assignment provision, the Eighth Circuit Court of Appeals found that the provision "clearly prohibits assignment of 'rights or benefits' under the Plan, but does not prohibit assignment of causes of action arising after the denial of benefits." Lutheran Medical Ctr. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan, 25 F.3d 616, 619 (8th Cir. 1994). Similarly, the Fifth Circuit Court of Appeals has held that an anti-assignment clause "should not be applicable, however, to an assignee who, as here, is the provider of the very services which the plan is maintained to furnish." Hermann Hosp. v. MEBA Medical & Ben. Plan, 959 F.2d 569, 575 (5th Cir. 1992). **[*30]**

GHI and Oxford respond by citing Lehigh Valley Hospital v. UAW Local 259 Social Security Dep't, No. 98-4116, 1999 U.S. Dist. LEXIS 12219, at *7 (E.D. Pa. Aug. 10, 1999), which delineates that the First and Ninth Circuits Courts of Appeals have held that *HN11* an express, anti-assignment provision bars any assignment of rights from plan participants to health care providers under an ERISA plan. See Davidowitz v. Delta Dental Plan of California, 946 F.2d 1476, 1481 (9th Cir. 1991) ("ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan."); City of Hope Nat'l Med. Ctr. v. Health Plus, Inc., 156 F.3d 223, 229 (1st Cir. 1998) (rejecting the distinction in Lutheran Medical Center between the assignment of rights or benefits and the assignment of causes of action and instead holding that clear terms in an ERISA plan should be given their natural meaning). Additionally, as Oxford points out, the Fifth Circuit Court of Appeals has also subsequently upheld the validity of anti-assignment clauses. See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002) **[*31]** (upholding the validity of an anti-assignment clause similar to the one in dispute here, and holding that "universally recognized canons of contract interpretation to the plain wording of the instant anti-assignment clause leads inexorably to the conclusion that any purported assignment of benefits . . . would be void.")

The Lehigh Valley court also noted "ERISA's instruction to enforce strictly the terms of employee benefit plans." Lehigh Valley, 1999 U.S. Dist. LEXIS 12219 at *7 (citing 29 U.S.C. § 1104(a)(1)(D) (instructing fiduciaries to administer plans "in accordance with the documents and instruments governing the plans"); Bennett v. Conrail Matched Savings Plan Administrative Committee, 168 F.3d 671, 679 (3d Cir. 1999) ("ERISA basically requires that fiduciaries comply with the plan as written unless it is inconsistent with ERISA.")). Furthermore, the Lehigh Valley court stated that "the position adopted by the First and Ninth Circuits provides the persuasive rule of law. Moreover, anti-assignment provisions are not contrary to ERISA's underlying objectives and policies since such provisions help to constrain health care costs by encouraging plan participation. **[*32]** " Lehigh Valley, 1999 U.S. Dist. LEXIS 12219 at *8 (citing Washington Hosp. Ctr. Corp. v. Group Hospitalization and Med. Services, Inc., 758 F. Supp. 750, 753-54 (D.D.C. 1991)). Finally, the Lehigh Valley court concluded that since the plan at issue in the case "expressly prohibits any assignment of rights or benefits to which a participant may be entitled, I find that plaintiff lacks standing to bring suit under ERISA. Accordingly, plaintiff's complaint will be dismissed." Id.

Consistent with Lehigh Valley, this Court also finds that the anti-assignment clauses in the contracts in this case are enforceable. [8] Furthermore, there is no indication in the record that Temple received consent from GHI or Oxford for the assignments presumably signed by Mr. Tremarcke and Ms. Griffin. Therefore, Temple does not have standing to sue under ERISA. [9]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[8] Temple argues without citing any caselaw that because one of GHI's anti-assignment provisions is more restrictive than the other, the clauses should be deemed to be ambiguous and construed

against GHI. One provision prohibits assignment of benefits, while the other also prohibits the assignment of causes of action. As GHI points out, the distinction between assignment of "causes of action" and assignment of "rights or benefits" was rejected in Lehigh Valley, and Temple's attempt to portray the assignment clauses as ambiguous fails. Temple also argues, again without citing any support in caselaw, that GHI and Oxford consented to the assignment by allowing for direct payment to MultiPlan facilities under their respective Access Agreements. This argument still fails to demonstrate that any assignment with the written consent (as required by the respective anti-assignment provisions) of GHI or Oxford ever took place. Temple also tries to explain how Oxford must sue for damages if the anti-assignment clause is held to be breached, rather than having the assignment rescinded, because Oxford's anti-assignment provision does not expressly state that such assignments will be void. During oral argument, however, Oxford cited cases in which courts voided the assignments even without the "magic words" in the anti-assignment clause. See <u>Vardag v. Motorola, Inc., 264 F. Supp. 2d 1056, 1059 (S.D. Fla. 2003)</u>; <u>Lehigh Valley Hosp. v. UAW Local 259 Soc. Sec. Dep't, 1999 U.S. Dist. LEXIS 12219 (E.D. Pa. 1999)</u>. **[\*33]**

9 Inasmuch as this Court has determined that Temple does not have standing under ERISA, the Court also denies Temple's request to stay any decision regarding the Tremarcke claim pending the outcome of the New York litigation concerning such claims. Even if another court were to determine that Mr. Tremarcke was in fact eligible under the GHI UWF Plan, such a decision would not rectify Temple's failure to acquire a valid assignment from Mr. Tremarcke.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## D. Stating a Claim for Breach of Contract

GHI argues that as a result of utilizing the UWF Plan for the payment of the Griffin claim, and as a result of denying benefits to Mr. Tremarcke based on GHI's determination of ineligibility, GHI never used the Access Agreement with MultiPlan, meaning that the Discount Agreement between MultiPlan and Temple was never triggered.

Temple does not dispute that GHI sent Ms. Griffin a letter stating the payment of $ 12,650.00 "represents payment in full for the services rendered during your hospitalization," thus indicating that GHI was making payment in accordance with the UWF plan as opposed to the Access **[\*34]** Agreement. GHI also argues that similarly to the Griffin claim, GHI did not elect to use the Access Agreement for the Tremarcke claim and instead determined that Mr. Tremarcke was ineligible under the UWF Plan and, therefore, denied the claim entirely. Oxford also claims it did not use the Access Agreement for the Tremarcke claim and has offered evidence that on September 15, 2003, MultiPlan sent a Claims Payment Advice to Oxford indicating "As per your request, we are canceling the above case."

Temple has failed to produce any evidence to show that GHI and Oxford used their Access Agreements with MultiPlan. As already discussed, Temple's argument that the Access Agreements were mandatory fails as well. Therefore, even if Temple could avoid the ERISA preemption issues and pursue a state law breach claim, it still has failed to produce any evidence that either GHI or Oxford exposed itself to contractual liability to Temple through the Access Agreements GHI and Oxford had with MultiPlan, and in turn through the Discount Agreement MultiPlan had with Temple. Therefore, even if Temple's claims survived ERISA preemption, Temple's claims fail to state a claim under a state law breach of **[\*35]** contract theory.

## E. MultiPlan

While Temple has correctly identified the fact that ERISA preemption does not apply to any of its claims against MultiPlan, Temple cannot recover against MultiPlan if MultiPlan's Discount Agreement was never triggered. As MultiPlan argues, if GHI and Oxford have not utilized their Access Agreements with MultiPlan, then MultiPlan cannot be liable to Temple under the Discount Agreement. Both GHI and Oxford declined to utilize their Access Agreements in relation to the

Tremarcke bills because of the questions of eligibility, and GHI declined to utilize the Access Agreement for the Griffin bills because of its obligation to charge the lowest rate under the options available in its UWF plan. Therefore, MultiPlan cannot be liable to Temple for these claims under the Discount Agreement. [10]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[10] Necessarily, then, although no motion is presently pending before the Court on this point, MultiPlan's third party claims against GHI and Oxford for damages in the event that MultiPlan is found liable to Temple also fail because Temple cannot recover against MultiPlan.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*36] III. CONCLUSION [11]

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

[11] The Defendants also seek summary judgment based on failure to exhaust administrative remedies, the first filed rule, the prior action pending doctrine, the statute of limitations, and the doctrine of accord and satisfaction. However, because the issues of ERISA preemption and the alleged assignments are determinative, the Court need not address these other arguments.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

For the reasons discussed above, the Court grants the Defendants' motions for summary judgment. An appropriate Order consistent with this Memorandum follows.

BY THE COURT:

S/ GENE E.K. PRATTER

UNITED STATES DISTRICT JUDGE

**ORDER**

Gene E.K. Pratter, J.

July 13, 2006

AND NOW, this 13th day of July, 2006, upon consideration of Defendants' Motions for Summary Judgment (Docket Nos. 53 and 65) and the responses and replies thereto, (Docket Nos. 60, 64, 68, and 70), it is hereby ORDERED that Defendants' Motions are granted.

IT IS FURTHER ORDERED that judgment is entered in the Defendants' favor and **[*37]** against Plaintiff, and that MultiPlan's third party claims against GHI and Oxford are dismissed.

BY THE COURT:

S/ GENE E.K. PRATTER

UNITED STATES DISTRICT JUDGE

# EXHIBIT I

<u>**Citation # 8**</u>
**2013 US Dist Lexis 15327**

MONTVALE SURGICAL CENTER, LLC a/s/o JUSTIN GUTSCHMIDT, Plaintiff, v. HORIZON BLUE
CROSS BLUE SHIELD OF NEW JERSEY INC. and DISTRICT COUNSEL IRONWORKERS WELFARE
FUND OF NORTHERN NEW JERSEY, Defendants.

Civil Action No. 12-3685 (SRC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2013 U.S. Dist. LEXIS 15327; 55 Employee Benefits Cas. (BNA) 1664

February 5, 2013, Decided
February 5, 2013, Filed

**NOTICE:** NOT FOR PUBLICATION

**CORE TERMS:** summary judgment, administrative remedies, material fact, futile, genuine issue,
causes of action, administrator, preemption, lawsuit, plan participant, burden of proof, nonmoving
party, exhaustion requirement, beneficiary, futility, exhaust, matter of law, failure to exhaust,
party's case, moving party, affirmative defense, well-established, conversion, exhaustion,
nonmoving, genuine, notice, post-service, state common law, state law

**COUNSEL: [*1]** For MONTVALE SURGICAL CENTER, LLC, a/s/o JUSTIN GUTSCHMIDT, Plaintiff:
ANDREW R. BRONSNICK, LEAD ATTORNEY, MASSOOD & BRONSNICK, LLC, WAYNE, NJ.

For HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY INC., Defendant: MATTHEW A. BAKER,
LEAD ATTORNEY, CONNELL FOLEY LLP, LIBERTY VIEW, CHERRY HILL, NJ.

For DISTRICT COUNCIL IRONWORKERS FUND OF NORTHERN NJ, Defendant: REGINA C. HERTZIG,
LEAD ATTORNEY, CLEARY & JOSEM, LLP, PHILADELPHIA, PA.

**JUDGES:** STANLEY R. CHESLER, United States District Judge.

**OPINION BY:** STANLEY R. CHESLER

**OPINION**

**CHESLER,** District Judge

This matter was initiated upon two separate motions to dismiss for failure to state a valid claim for
relief, pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u>: one filed by Defendant Ironworkers
District Council of North Jersey Welfare Fund[1] (the "Fund") [docket entry 6] and the other by
Defendant Horizon Blue Cross Blue Shield of New Jersey Inc. ("Horizon") [docket entry 12]
(collectively, "Defendants"). The motions were fully briefed. Upon review of the papers, and
pursuant to <u>Federal Rule of Civil Procedure 12(d)</u>, the Court converted both motions to dismiss into
motions for summary judgment pursuant to <u>Federal Rule of Civil Procedure 56</u>. See December 18,
2012 Order [docket **[*2]** item no. 14]. The Court provided the parties with notice of the
conversion as well as an opportunity to submit relevant supplemental material regarding the
motions. See id. The parties did not submit any additional materials nor did they otherwise submit
any papers in response to the Court's <u>Rule 12(d)</u> conversion order. The Court therefore proceeds to
rule on the motions under the standard of <u>Rule 56</u> and based on the papers submitted prior to the
conversion. The Court rules without oral argument pursuant to <u>Federal Rule of Civil Procedure 78</u>.

For the reasons discussed below, it will grant summary judgment in favor of Defendants.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

1 Defendant the Fund was improperly named in the Complaint as "District Counsel Ironworkers Welfare Fund of Northern New Jersey."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## I. Background

This is an action concerning the allegedly improper underpayment of healthcare benefits under the Fund's health plan (the "Plan"), a self-funded welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. The Plan was administered by Defendant Horizon, but the Fund pays benefits and makes all final claims decisions. Plaintiff Montvale Surgical Center ("Plaintiff" **[*3]** or "Montvale") is an outpatient ambulatory surgery center where minimally invasive pain management and podiatry procedures are performed. It is an "out of network" provider, meaning it does not participate in Horizon's preferred provider network.

Montvale rendered services for patient Justin Gutschmidt, a participant in the Plan, obtained a signed assignment of benefits from him, and submitted claims for reimbursement. Plaintiff alleges that it has not received full payment on these claims. The Complaint asserts state common law claims for breach of contract, promissory estoppel, negligent misrepresentation and unjust enrichment.

## II. Discussion

## A. Standard of Review

Defendants initially challenged the sufficiency of the Complaint under Rule 12(b)(6). On a Rule 12 (b)(6) motion, however, the Court is limited in its review to a few basic documents: the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Because Defendants presented extraneous material in support of their motions, the **[*4]** Court exercised its authority to treat them as motions for summary judgment.

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003) (quoting United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991)). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court **[*5]** – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . **[*6]** . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

## B. Analysis

Defendants raised two arguments in their motions to dismiss. First, they moved to dismiss the Complaint the grounds that ERISA preempts state law claims. Second, Defendants argued that, even if the Complaint were amended to assert the appropriate claim under ERISA's civil enforcement provision, § 502(a), Plaintiff would fail to state a **[*7]** claim upon which relief could be granted because the factual allegations of the Complaint demonstrate that Plaintiff failed to exhaust administrative remedies.[2] It was Defendants' exhaustion-based argument that prompted the Court to convert the motions to motions for summary judgment, as both Plaintiff and Defendants relied on factual assertions and exhibits not set forth in or incorporated into the Complaint.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

2 In their motions, Defendants did not challenge the Complaint on the issue of whether the assignment of benefits gives Plaintiff standing to pursue these claims, and this Court will not raise the issue *sua sponte*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The first argument, regarding ERISA preemption, can be dispensed with summarily. ERISA preemption of state law causes of action is well-established. See Aetna Health, Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). ERISA § 502(a) is the statute's civil enforcement mechanism, and subsection (1)(B) expressly grants a plan participant or beneficiary the right to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). **[*8]** The Supreme Court has held that "the ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Davila, 542 U.S. at 209 (quoting Metropolitan Life, 481 U.S. at 65-66). Indeed, the statute itself contains a preemption provision. ERISA § 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Suits brought by participants or beneficiaries of ERISA plans concerning matters that "relate to" those plans are governed by the cause of action provided by ERISA § 502(a). Davila, 542 U.S. at 208-09. All of the state law causes of action seek to recover the benefits to which Montvale claims it is entitled under the Plan. Clearly, the claims "relate to" the plan. The entire Complaint is subject to dismissal on preemption grounds

alone.

Plaintiff does not oppose Defendants' preemption argument. In fact, it would appear that Montvale implicitly requests to proceed on an ERISA § 502(a) claim, as its entire opposition **[*9]** brief is dedicated to arguing that Defendants' arguments regarding the failure to exhaust do not preclude Montvale from pursuing a § 502(a) claim. Of course, a party may not amend its complaint in a brief submitted in opposition to a motion to dismiss. Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007). The Court would, however, permit Plaintiff the opportunity to amend the Complaint to re-plead its cause of action as a § 502(a) claim unless that amendment would be futile. See Phillips, 515 F.3d at 236 (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile.") The Court therefore turns to Defendants' arguments that Plaintiff's § 502(a) claim would fail as a matter of law based on Montvale's failure to exhaust the Plan's administrative remedies.

It is well-established that an ERISA plan participant must exhaust the administrative remedies under the plan before she may initiate a lawsuit to recover benefits or otherwise enforce her rights under the terms of the plan pursuant to the cause of action created by ERISA § 502(a)(1)(B). Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, (3d Cir. 2002). **[*10]** While the statute itself does not expressly require exhaustion of administrative remedies as a prerequisite to sue, the United States Court of Appeals for the Third Circuit has described the exhaustion requirement as a judicial innovation serving many sound policies, among others, reducing frivolous lawsuits, promoting the consistent treatment of claims for benefits, and enhancing fiduciary management of plans by preventing premature judicial intervention in the plan fiduciaries' decision-making process. Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 279 (3d Cir. 2007) (citing Harrow, 279 F.3d at 249 and Amato v. Bernard, 618 F.2d 559, 567-68 (9th Cir.1980)). The exhaustion requirement is a non-jurisdictional affirmative defense. Price, 501 F.3d at 280. Id. at 280; see also Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 782 (3d Cir. 2007) (holding that defendant bears the burden of proving an affirmative defense to plaintiff's ERISA claims).

The relevant Plan provision, applicable to post-service hospital and medical claims, such as those submitted by Montvale with regard to the services provided to Gutschmidt, provides the following administrative remedy structure:

> There is a **[*11]** two level review for post-service Hospital and Medical claims. You will be sent a notice of a decision by Horizon within 30 days for the first level of appeal. If you are dissatisfied with the decision of the first appeal, you may submit a second appeal to the Board of Trustees within 180 days of the receipt of the first decision. You will be sent a notice of a decision by a Sub-committee of the Board of Trustees within 30 days of receipt for the second level of appeal.

(Fund Br., Ex. A at 82.) The Plan reiterates this information by providing Horizon's address for submission of post-service hospital and medical claims and the Board of Trustees' address for submission of other appeals, including specifically "the second level appeal for hospital and medical claims." (Id. at 80-81.)

Defendants argue that Plaintiff did not exhaust its administrative remedies as required by the Plan because it did not properly submit a second level appeal to the Board of Trustees. They rely on the Certification of the Fund Administrator, whose responsibilities include receiving all appeals pursuant to the Plan. The Fund Administrator, Peter A. Sclafani, states he has "not received any appeal from Justin **[*12]** Gutschmidt or any assignee of Mr. Gutschmidt concerning services provided by Montvale Surgical Center addressed to the Trustees of the Fund." (Sclafani Cert., ¶ 7.)

Plaintiff does not dispute this fact or submit evidence to controvert Defendants' demonstration that no appeal was filed with the Fund's Board of Trustees. Instead, it argues that the second level appeal is not mandatory, and that, even if it were, Plaintiff complied with that obligation by

submitting a second level appeal to *Horizon*. Plaintiff's arguments are unavailing. The Plan clearly requires that two levels of appeals must be exhausted before the initiation of litigation. It notifies the insured that he may not file "a lawsuit to obtain benefits until after you have requested a review and a *final* decision has been reached on review." (Fund Br., Ex. A at 83) (emphasis added). The review provision makes clear that, for the claim at issue, "there is a two-level review." (Id. at 82.) Though the provision states that a claimant "may" submit a second appeal if it is dissatisfied with Horizon's first-level decision, the word "may" advises the claimant of his right to further review. It does not change the nature of the full **[*13]** review process, which consists of two levels, and it does not modify the provision requiring that a final decision be made in that process before a lawsuit may be filed. Montvale alternatively asserts that it "substantially complied" with the two-level appeals process by submitting a second administrative appeal to Horizon, rather than to the Board of Trustees. However, Montvale provides no legal authority holding that substantial compliance with ERISA plan terms is sufficient to fulfill ERISA's pre-litigation exhaustion requirement.

Finally, Plaintiff attempts to salvage its private action under ERISA § 502(a) on the grounds that exhaustion of Plan remedies would have been futile. While the Third Circuit recognizes that an exception to the exhaustion requirement applies when "resort to the administrative process [under the ERISA plan] would be futile," it has held that a plaintiff merits this waiver only when the plaintiff makes "a clear and positive showing of futility." Harrow, 279 F.3d at 249 (quoting Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990) and Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)). In Harrow, the Court of Appeals identified various **[*14]** factors a court may weigh to assess whether exhaustion should be excused on grounds of futility. They are:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

Id. at 250. These factors need not all carry the same weight, and a court should consider the applicability of the futility exception in light of the circumstances of a particular case. Id.

The factors do not weigh in favor of applying the futility exception. Montvale's assertion that it diligently pursued administrative relief is belied by the record, which shows that it submitted a second appeal to Horizon, in spite of the Plan's plain language directing the appeal be sent to the Fund's Board of Trustees. Montvale also argues that the Fund failed to comply with its own procedures by failing to provide a Summary Plan Description, which Montvale requested of Horizon. The obligation to furnish **[*15]** a copy of the SPD, however, runs from the plan administrator to the plan participant or beneficiary, upon the latter's written request. 29 U.S.C. § 1024(b)(4). Montvale is not the plan participant or beneficiary, and Horizon, to which it directed the request for the SPD, is not the Plan administrator within the meaning of ERISA. As to the remaining factors, Plaintiff provides no evidence to support them. In short, Plaintiff fails to make the required "clear and positive showing" that exhausting the Plan's administrative remedies would have been futile.

Defendants have come forward with evidence demonstrating that Plaintiff did not exhaust the Plan's administrative remedies before filing this lawsuit. The Court finds that Defendants, which bear the burden of proving the affirmative defense of failure to exhaust administrative remedies, have established that, as a matter of law, no reasonable jury could find in Plaintiff's favor on an ERISA § 502(a) claim. Plaintiff, in response, has pointed to no genuine issues of fact. Having met their burden under Rule 56, Defendants are entitled to summary judgment on the Complaint.

## III. Conclusion

For the foregoing reasons, the Court will grant summary **[*16]** judgment in favor of the Fund and of Horizon. An Order will be filed together with this Opinion.

/s/ Stanley R. Chesler

STANLEY R. CHESLER

United States District Judge

Dated: February 5, 2013